Aughenbaugh, Appellant, *v.* North American
Refractories Company.

Argued January 6, 1967. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*Carl A. Belin, Jr.,* with him *Belin & Belin,* for appel-
lants.

*David T. Quigley,* with him *Dan P. Arnold,* for ap-
pellee.

OPINION BY MR. JUSTICE EAGEN, June 29, 1967:

This is an appeal from a decree in equity in the court below entering judgment on the pleadings in favor of the defendant.

On a motion for judgment on the pleadings by the defendant, the complaint, answer and reply to averments of new matter in the answer are considered, and all facts plead by the plaintiff which are relevant and material must be accepted as admitted even though denied. However, inferences and conclusions drawn from a written instrument which is in the record, and asserted conclusions of law should not be considered or accepted as admitted. See *Herman v. Stern*, 419 Pa. 272, 213 A. 2d 594 (1965), and *London v. Kingsley*, 368 Pa. 109, 81 A. 2d 870 (1951).

These, therefore, are the relevant facts to be considered in evaluating the defendant's right to judgment on the pleadings in this case:

In 1959 the federal government condemned the land occupied by the Lumber City, Pennsylvania plant of appellee, North American Refractories Company (Narco), pursuant to a flood control project. In August 1961, written notice of the impending closing was given to each employee and, soon thereafter, the plant was officially closed. At the time of the notice, there were approximately forty-four production employees in the unit represented by the United Brick and Clay Workers of America, AFL-CIO, Local Union No. 448 (Local), who would be affected by the plant closing. Previous to the closing, Narco, in consultation with officials of Local, unilaterally promulgated a written list of procedures relating to the transfer of the affected Lumber City employees to a similar Narco plant in Curwensville, Pennsylvania. These procedures proved unsatisfactory to Local.

In an effort to solve the complex socio-economic problems triggered by the shutdown and to head off

an impending strike at Lumber City, Narco and Local initiated a series of negotiations regarding transferals, which culminated in a March 26, 1960, Agreement on the transfer issue.

Mutual consultations continued and on November 2, 1962, the first industry-wide transfer clause was negotiated, which replaced the prior 1960 Agreement. Under the terms of the 1962 Agreement, former Lumber City employees who applied for work at the Curwensville plant were to be given preferential consideration over other applicants for any job openings which might arise, with certain provisions.[1] This latter Agreement was in turn replaced by a "geographic relocation" Agreement of August 1, 1964.

From 1962 until 1964, Narco's manpower needs at its Curwensville plant were exclusively filled from the ranks of former Lumber City employees. After the 1964 Agreement was effectuated, no former Lumber City employees were among those subsequently hired at Curwensville, even though such employees made application for available work. Narco's position was that the 1964 Agreement abrogated the 1962 Agreement and relieved it of any preferential hiring obligation towards the former Lumber City employees. Local asserted that these new hires violated the contract rights of the Lumber City men and filed a grievance pursuant to the procedure established by the 1964 Agreement. Dean Thomas F. Quinn was agreed upon as Arbitrator and the following issue submitted to him: "Can the Company be required to employ former Lumber City employees at the Curwensville, Pennsylvania plant?"

---

[1] Under the 1962 Agreement, the company agreed to give former Lumber City employees "consideration for employment at Curwensville, Pennsylvania Plant" on a preferential basis over new hires if such employees had over five years of seniority, applied for work, met the established employment standard at the Curwensville Plant and were qualifed to perform the available work,

Before the Arbitrator, the matter resolved itself into which preferential hiring provision applied: the 1962 Agreement or the 1964 Agreement.[2] After a hearing, the Arbitrator decided the 1962 Agreement applied to the Lumber City employees.[3]

The Arbitrator concluded that the present appellants had, at least, a conceptual right of preference on hiring but he was unable to take cognizance of any disputes arising over this right since the controlling 1962 Agreement specifically deemed such disputes "not . . . subject to arbitration."

Narco alleges that upon receipt of the Arbitrator's Award, it reconsidered all the former Lumber City employees who had been refused for job openings via the 1964 Agreement, but found none to be qualified. Local denies this assertion. In any event, Narco continued to fill such job openings as arose after the Award with new employees.

Further attempts between the parties to negotiate the controversy proved fruitless. The dissatisfied employees then filed an action in equity, through union-retained counsel, requesting, in the alternative, compulsory arbitration of the grievances or damages for breach of contract. Narco filed an answer which asserted, inter alia, that the matter complained of had been conclusively decided by the Arbitrator in the

---

[2] In his written opinion, the Arbitrator stated: "The only issue which is arbitrable . . . is really the rights and obligations of the former Lumber City employees and the Company." He further stated that he had "no jurisdiction over the rehiring or recall disputes. . . ."

[3] The Arbitrator deemed his decision nonretroactive. Thus the 1962 Agreement is regarded as effective for two distinct periods only; (a) From its inception (Nov. 2, 1962) until the effective date of the 1964 Agreement, August 1, 1964 (when Narco felt itself no longer bound by the 1962 Agreement) ; and (b) From and after the date of the receipt of the Arbitrator's Award by the parties (April 8, 1965).

above submission. Narco then filed a motion for judgment on the pleadings on the ground that the action was "an appeal" from the Arbitrator's decision and was forbidden by the Arbitration Act of 1927. (Act of April 25, 1927, P. L. 381, 5 P.S. §161). The court below granted the motion of Narco and held that the individual rights of the plaintiff-employees were concluded by the Arbitrator's decision. The employees then took this appeal.

Our initial inquiry must be directed to the question of whether or not the Arbitrator addressed himself to the merits of the present dispute, thus making a final and binding determination of the matters now sought to be adjudicated and closing the doors of the courts to any further action by the employees. We conclude that the scope of the Arbitrator's Award was not such as to encompass the merits of the instant dispute.

Only one facet of the controversy here in question was submitted to arbitration. The submission became solely for the purpose of determining which of the two extant preferential hiring agreements controlled the rights of the Lumber City employees. It went no further. After the Arbitrator decided the latter question, he specifically recognized his inability to take cognizance of the merits of any actual disputes arising under the 1962 Agreement[4] because of the explicit ban on arbitration contained therein. Thus the Arbitrator's task was limited to a determination of the abstract, theoretical rights adhering to the Lumber City employees by virtue of whatever preferential hiring provision controlled. We do not agree with the court below then, that the appellants are foreclosed from

---

[4] The Arbitrator's written opinion states: "This Arbitrator has no jurisdiction over the rehiring or recall disputes which might arise or might have arisen under the 1962 [Agreement] and he cannot take cognizance of them or arbitrate them."

even attempting to seek any judicial relief because of the Arbitrator's Award.

We next turn to Narco's contention that, regardless of what effect is given to the Arbitrator's Award here, the appellants have no right to press a claim under the 1962 Agreement because that Agreement provided an exclusive remedy for settling any dispute arising thereunder, i.e., "discussion" between Narco and the Union.[5] The question really comes down to whether the parties intended the "discussion" remedy to be a terminus so final and binding as to preclude any court from examining the merits of potential disputes. We will not lightly infer such an intent, even though we are well aware that federal labor law policy, in order to foster industrial tranquility, prefers that industrial disputes be settled by the internal grievance machinery provided for by the collective bargaining agreement. See LMRA §203(d), 29 U.S.C. §173(d) (1965); *Republic Steel Corporation v. Maddox*, 379 U.S. 650, 653 (1965).

In order for a contractual remedy to be considered as final and binding, it is our view that the intent of finality must be spelled out therein or at least contextually implicit from a reading of the agreement as in *Guille v. Mushroom Transportation Co.*, 425 Pa. 607, 229 A. 2d 903 (1967). The pertinent provision of the instant Agreement certainly does not spell out any element of finality; and from our reading of the provision in context, we do not find any intent strong enough to establish inferential finality. It is thus our conclusion that the "discussion" provision of the 1962 preferential hiring Agreement does not evince the requisite factor of mutually agreed upon finality, which would be necessary to preclude judicial review of a controversy under the contract involved.

---

[5] The Agreement provided in pertinent part that "complaints arising under this provision will be subject for discussion by the Company and the Union only at the Union's request. . . ."

Narco next contends that the court below was correct in refusing equitable jurisdiction over the instant dispute, because the appellants should not be able to seek specific enforcement of a hiring provision that is vague, indefinite and uncertain. The court below made no finding that the provision in question is vague, indefinite and uncertain. Nor do we pass on this question. The request for specific enforcement meant that appellants asked the court below to order compulsory arbitration. Insofar as this latter request is concerned, we agree with Narco that equitable jurisdiction does not lie. Compulsory arbitration is not to be decreed here. The controlling 1962 contract provision specifically excludes disputes of the instant type from arbitration. Any rights the employees may have, arise under the contract and, by the same token, they are bound by that contract's explicit limitations. Hence, on this ground alone, the court below was correct in denying equitable relief. However, on the record before us, we are not persuaded that complete termination of the plaintiffs' cause was justified. Even if equitable relief were not warranted, but money damages for breach of contract were justified, judgment should not have been entered for the defendant, but rather the action should have been certified to the law side of the court. See *Wilson v. King of Prussia Enterprises, Inc.*, 422 Pa. 128, 221 A. 2d 123 (1966). And, it is fundamental that a summary judgment should be entered only where the right is clear and the matter free from doubt. See *Evans v. Marks*, 421 Pa. 146, 218 A. 2d 802 (1966).

And, if a provision of the collective bargaining was breached, an action for damages may properly be brought by individual employees under LMRA §301(a), 29 U.S.C. §185(a) (1965). In *Smith v. Evening News Association*, 371 U.S. 195, 200 (1962), the Supreme Court recognized the standing of individuals to main-

tain §301 suits. While the Supreme Court specifically reserved the question of "when, for what kinds of breach, or under what circumstances, an individual employee can bring a §301 action . . .;"[6] we do not think that the instant suit, which neither contradicts the terms of the collective bargaining agreement nor thwarts effective union representation, is of the type which should be prohibited.

It is well settled that federal labor law must be applied in determining any action brought under §301, *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448 (1957); *United Steelworkers of America v. Westinghouse,* 413 Pa. 358, 196 A. 2d 857 (1964), although such suit may be brought in either federal or state court. *Smith v. Evening News Association,* supra; *Local 174 Teamsters v. Lucas Flour Co.,* 369 U.S. 95 (1962).

Before the individual can bring a §301 suit, the remedies provided by the contract between the employer and the union must be exhausted, or, at least, the employee must *attempt* to exhaust them. *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652 (1965); *Smith v. Evening News Association,* supra, at 196 n.1; Comment, Federal Protection of Individual Rights Under Labor Contracts, 73 Yale L.J. 1215, at 1227 n.59 (1964).

In the instant case, the employees involved, through the union, exhausted the only grievance machinery provided by the terms of the preferential hiring provision, i.e., "discussion". They have thus fulfilled the mandate of *Republic Steel Corp. v. Maddox,* supra.

One further note is appropriate. The recent case of *Vaca v. Sipes,* 386 U.S. 171, 87 S. Ct. 903 (1967), and our own recent decision in *Guille v. Mushroom Trans. Co.,* supra, are not apposite to the instant case, because here, unlike *Vaca* and *Guille* there is no evidence that

---

[6] *Smith v. Evening News Association,* supra, at 204 (BLACK, J., dissenting).

the union has agreed that the individual employees' grievance is unmeritorious, and hence refused (or was unable) to process it further. Indeed, the fact that the union retained counsel on behalf of the appellants herein strongly supports the conclusion that the union does not acquiesce in the contractual resolution of the instant dispute.

We would only add that the posture of the instant case is such that we do not, in any manner, pass upon the merits thereof. We hold only that the doors of the court below are open to the appellants. Granting the difficulty of the employees' burden of proof in the instant case, they should at least be allowed to *attempt* to prove a breach of contract as to any new hires by Narco occurring after April 8, 1965.

Decree vacated and record remanded with directions to enter an order certifying the case to the law side of the court. Costs on appellee.

Mr. Justice ROBERTS concurs in the result.