503 A.2d 36

Stanley L. PHILLIPS, Appellant,

v.

BABCOCK & WILCOX, Tubular Products Division of McDermott, Inc.

Superior Court of Pennsylvania.

Argued Oct. 8, 1985.

Filed Jan. 17, 1986.

Samuel S. Blaufeld, Pittsburgh, for appellant.

Brian J. Dougherty, Pittsburgh, for appellee.

Before SPAETH, President Judge, and BROSKY and ROWLEY, JJ.

BROSKY, Judge:

This is an appeal from the order granting appellee's motion for summary judgment and dismissing appellant's complaint in this civil action for the tort of wrongful discharge.

Appellant's sole issue is whether a civil action for the tort of wrongful discharge can be maintained by a union employee whose employment relationship is governed by a collective bargaining agreement. The trial court found that such an action is unavailable to employees who are protected from peremptory discharge by some other means, i.e. contract or statute. Since under the terms of the collective bargaining agreement appellant was protected from suspension or discharge without proper cause, the trial court granted appellee's motion for summary judgment. We affirm.

Appellant was hired as an electrician in appellee's plant in 1968 and is a member of the United Steel Workers of America. In September, 1982 appellant was laid off as part of a general economic layoff. While still laid off, appellant filed a claim for workmen's compensation alleging a job related loss of hearing. When appellee began to call its employees back to work in April of 1984, appellant was not reinstated. Appellant filed a grievance according to the terms of the collective bargaining agreement between the Union and appellee which grievance was sustained.

During the pendancy of the arbitration proceedings concerning his grievance, appellant filed the instant action for wrongful discharge. Appellant contends that his discharge was made in retaliation for filing the workmen's compensation claim. Thus, appellant argues that since retaliatory firing in response to an employee's filing a workmen's compensation claim is against public policy, he should be able to maintain the cause of action even though he is, concededly, not an at-will employee. We do not agree.

The action for wrongful discharge in Pennsylvania was judicially established by our Supreme Court in the case of *Geary v. United States Steel Corporation,* 456 Pa. 171, 319 A.2d 174 (1974). In *Geary,* the Supreme Court carved out a very narrow exception to the established law (commonly referred to as the "at-will doctrine") which held that absent a statutory or contractual provision to the contrary, either party could terminate an employment relationship for any or no reason. The Supreme Court held that where no clear mandate of public policy is violated by the termination of an at-will employment relationship, an employee at will has no cause of action for wrongful discharge. Thus, implicit in the holding is that an employee at will can maintain a wrongful discharge action where a clear mandate of public policy has been violated by the termination.

Since the *Geary* decision, the courts of this Commonwealth have entertained suits by at-will employees where their discharges violated clear mandates of public policy. In *Reuther v. Fowler & Williams, Inc.,* 255 Pa.Super. 28, 386 A.2d 119 (1978), this Court held that the cause of action exists where the employee at will is discharged for performing an obligation of jury service. Thus, since *Geary,* at-will employees have been afforded the opportunity to prove in court claims for arbitrary and retaliatory discharge in certain instances.

Appellant seeks to have us extend the coverage of this judicially created protection and declare the cause of action available to union employees who are otherwise protected from wrongful discharge by collective bargaining agree-

ments. Appellant advances his position on the assumption that the intent behind the development of the cause of action was to uphold public policy and provide a remedy to those who were injured by an employer's disregard of such policy. However, the wrongful discharge cause of action was never intended to provide a forum to vindicate public policy and punish those who deviate from it.

The Supreme Court's decision in *Geary* was clearly concerned with the protection of "corporate personnel in the areas of employment not covered by labor agreements." *Geary*, supra, 456 Pa. at 181, 319 A.2d at 179. In fact, even in his dissent in *Geary*, 456 Pa. at 188, 319 A.2d at 182, Justice Roberts noted that "the time has surely come to afford *unorganized* employees" a legal forum. (Emphasis Added). The Court's purpose was to provide a remedy for employees with no other recourse against wrongful discharge.

Appellant and all like-situated employees are not without recourse when faced with indiscriminate discharge even when the discharge violates public policy. The collective bargaining agreement in the instant case provides protection against suspension or discharge without "proper cause." Surely, in pursuing a grievance under the provisions of the agreement, if appellant can show that his discharge was in retaliation for his filing a workmen's compensation claim, he will have proved that his discharge was not for "proper cause." It would appear, therefore, that appellant will then be entitled to the remedies provided in the agreement.

Furthermore, we are not persuaded by appellant's argument that the wrongfully discharged at-will employee has greater remedies available in a civil action than does a union employee under a collective bargaining agreement since a civil court could award punitive damages.[1] While the at-will

---

1. Although punitive damages are not generally available under collective bargaining agreements, if the agreement is silent as to remedies, arbitrators can award punitive damages. See John Morrell & Co., 69

employee may be entitled to punitive damages in a civil action, he does not have the ability to obtain some of the remedies available to union members; such as reinstatement to his position, which is a commonly provided remedy in labor agreements. Thus, we find that a difference in remedies is not enough to justify an extension of the coverage of the wrongful discharge action.

Finally, in deciding not to extend the wrongful discharge action to employees who are otherwise protected by contract or statute, we must take into consideration the strong public policy which favors the right of parties to enter into contracts. In the instant case, the union and appellee in their agreement decided the remedies that would be available, and provided that those remedies would be final and binding. This intent is expressly set forth in the agreement and, therefore, the remedies available should be preclusive of any others. *Aughenbaugh v. North American Refractories Company*, 426 Pa. 211, 231 A.2d 173 (1967).

Therefore, because the wrongful discharge action in Pennsylvania was judicially created to protect otherwise unprotected employees from indiscriminate discharge and to provide unorganized workers a legal redress against improper actions by their employers, we hold that an action for the tort of wrongful discharge is available only when the employment relationship is at will. *Geary*, supra.[2]

Order affirmed.

SPAETH, President Judge,[*] files a dissenting opinion.

LA 264 (1977); *Local 416 v. Nelgesteel Corp.*, 80 LRRM 2113 (E.D.Wis. 1971).

2. Although this is the first appellate decision in the Commonwealth to so hold, we note that the Federal Courts in Pennsylvania, when construing Pennsylvania law, have consistently held that the action is restricted to at-will employment relationships. See *Polsky v. Radio Shack*, 666 F.2d 824 (3d Cir.1981); *Perks v. Firestone Tire and Rubber Co.*, 611 F.2d 1363 (3d Cir.1979).

* President Judge SPAETH joined in this opinion before the expiration of his term on the court.

SPAETH, President Judge, dissenting:

I am unable to agree with the majority's conclusion that the tort of wrongful discharge as articulated in *Geary v. United States Steel Corporation*, 456 Pa. 171, 319 A.2d 174 (1974), is available only to an at-will employee. Such a reading is in my view too narrow. While the dictum in *Geary* of course does outline "a remedy for employees with no other recourse against wrongful discharge," At 354, the tort of wrongful discharge also serves *"the interest of the public* in seeing to it that the employer does not act abusively and a proper balance between the employer's and employee's interests is preserved." *Yaindl v. Ingersoll-Rand Co.*, 281 Pa.Super. 560, 572, 422 A.2d 611, 617 (1980) (emphasis added). Our cases have consistently recognized this broader principle. In *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119 (1978), we identified the right to trial by jury as the public policy mandate violated by an employer who discharged an employee because he did not seek to be excused from jury service. In *Hunter v. Port Authority of Allegheny County*, 277 Pa.Super. 4, 419 A.2d 631 (1980), we similarly held that the public policy favoring rehabilitation of criminals, as well as the Pennsylvania Constitution, prevented a public employer from refusing to hire a job applicant solely because of a prior conviction unrelated to his ability to perform the job sought. In *Yaindl* we held that although the employee had failed to make out his case, the public policy favoring product safety could limit an employer's discretion to fire "whistle blowers." In light of the concerns emphasized in these cases, I believe that the majority mischaracterizes the tort of wrongful discharge when it states that the cause of action "was never intended to provide a forum to vindicate public policy and punish those who deviate from it." [1] At 354.

---

1. I recognize, as the majority notes, that federal courts have applied the Pennsylvania tort of wrongful discharge only to at-will employees. State courts, however, are not bound by federal interpretation of state law. *See, e.g., Rader v. Pennsylvania Turnpike Commission*, 407 Pa. 609, 182 A.2d 199 (1962).

I should nevertheless not uphold a common law cause of action in this case if the collective bargaining agreement provided an equivalent remedy. The majority states that appellant is not "without recourse," *id.*, because he can file a grievance alleging discharge without "proper cause." It is true that section 8 of the collective bargaining agreement provides for such a grievance; however, section 8(d) specifically authorizes a "make whole" remedy only:

> Should it be determined by the Impartial Umpire that an employee has been suspended or discharged without proper cause therefor, the Company shall reinstate the employee and make him whole for the period of his suspension or discharge, which shall include providing him such earnings and other benefits as he would have received except for such suspension or discharge, and offsetting such earnings or other amounts as he would not have received except for such suspension or discharge. In suspension and discharge cases only, the Umpire may, where circumstances warrant, modify or eliminate the offset of such earnings or other amounts as would not have been received except for such suspension or discharge.

R.R. at 45–46.

It is therefore apparent that punitive damages would not be available to appellant in arbitration. *Cf. John Morrell & Co.*, 69 LA 264 (1977).

The majority does not find this difference in remedies compelling; it points out that the contractual employee may obtain reinstatement, unavailable to the at-will employee in a wrongful discharge action. If, however, the tort of wrongful discharge satisfies a public as well as a private interest in circumscribing employer discretion, as I believe it does, then punitive damages are a necessary component of the remedy. As the Illinois Supreme Court reasoned in extending the tort of wrongful discharge to unionized employees, "If there is no possibility that an employer can be liable in punitive damages, not only has the employee been afforded an incomplete remedy, but there is no available

sanction against a violator of an important public policy of th[e] State." *Midgett v. Sackett-Chicago, Inc.,* 105 Ill.2d 143, 150, 85 Ill.Dec. 475, 479, 473 N.E.2d 1280, 1284 (1984). The public interests implicated in the retaliatory discharge of a contractual employee are no less than those implicated in the retaliatory discharge of an at-will employee, and deserve no lesser protection.

I should reverse the order granting summary judgment and reinstate the complaint.