OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Justine Michael, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

     Provens, Appellant, v. Stark County Board of Mental
Retardation & Developmental Disabilities, Appellee.
     [Cite as Provens v. Stark Cty. Bd. of Mental Retardation &
Developmental Disabilities (1992),     Ohio St.3d     .]
Employer and employee -- Public employees do not have a private
     cause of civil action against employer to redress alleged
     violations by employer of policies embodied in the Ohio
     Constitution, when.
Public employees do not have a private cause of civil action
     against their employer to redress alleged violations by
     their employer of policies embodied in the Ohio
     Constitution when it is determined that there are other
     reasonably satisfactory remedies provided by statutory
     enactment and administrative process.
     (No. 91-1412 -- Submitted May 12, 1992 -- Decided July 29,
1992.)
     Appeal from the Court of Appeals for Stark County, No.
CA-8269.
     This is an appeal of a judgment of the court of appeals
affirming a decision of the trial court granting summary
judgment to the defendant-appellee, Stark County Board of
Mental Retardation & Developmental Disabilities ("board").  The
necessary facts of this case are that the plaintiff-appellant,
Patricia Provens, a teacher employed in the defendant's school
facility, filed a complaint in the Court of Common Pleas of
Stark County against the defendant.  In her complaint the
plaintiff alleged that the board, and its supervisors, had
harassed, discriminated against, and disciplined her, all as a
result of her having criticized the operation and practices of
the board, and having filed discrimination charges against the
board with both the Ohio Civil Rights Commission and the Equal
Opportunity Commission.  Further, plaintiff alleged that the
board retaliated against her because she had initiated an
assault and battery lawsuit against administrative employees of
the board.
     The plaintiff further alleged in her complaint that her
activities in speaking out against the board's policies, and in
filing the lawsuit and the administrative charges, were
protected by the Ohio Constitution.1  She also alleged that the

board, in violation of her constitutional rights, harassed her, unlawfully searched her desk, and singled her out for discriminatory treatment, making it extremely difficult for her to fully and faithfully discharge her duties and obligations as an employee of the board.  At a deposition conducted on February 15 and 16, 1990, the plaintiff testified at length regarding the allegations contained in her complaint, all of which were basically centered on her claims of being "harassed" by her employer.2

The plaintiff sought injunctive relief, as well as compensatory and punitive damages.  The board timely answered the complaint, denying all the plaintiff's claims of harassment, denying that any acts of the board had violated the plaintiff's Ohio constitutional rights, and offering the affirmative defense that the plaintiff's complaint failed to state a claim for which relief could be granted.

The board thereafter filed its motion for summary judgment on the ground that there is no private cause of action for civil damages for the violation of the plaintiff's Ohio constitutional rights as alleged in her complaint.  The board additionally set forth its opinion that assuming a cause of action for civil damages for a violation of Section 11, Article I of the Ohio Constitution exists, the plaintiff was not entitled to relief since her activities were not "protected" under the Ohio Constitution.  Further, the board asserted that the plaintiff had failed to state a claim for intentional infliction of emotional distress since the alleged conduct was not extreme or outrageous.  Moreover, in its supportive memorandum, the board argued that punitive damages cannot be awarded against a public entity such as the board.

The trial court granted summary judgment in favor of the board on the ground that "a private cause of action under the Ohio Constitution does not exist," citing Bush v. Lucas (1983), 462 U.S. 367. 103 S.Ct. 2404; 76 L.Ed.2d 648, and held that it would be inappropriate for the court to create a new judicial remedy.  The trial court did not determine the issue of whether the plaintiff's activities constituted "protected activity."

Upon appeal, the Court of Appeals for Stark County affirmed the judgment of the trial court, also citing Bush v. Lucas, supra.

This cause is now before the court pursuant to the allowance of a motion to certify the record.

Green, Haines, Sgambati, Murphy & Macala Co., L.P.A., Ronald G. Macala and Randall Vehar, for appellant.
Day, Ketterer, Raley, Wright & Rybolt Co., L.P.A., J. Sean Keenan and Jill Freshley Otto, for appellee.

Holmes, J.   The plaintiff-appellant's complaint alleged a violation of her state constitutional rights.  Although she did not specify in her complaint what rights were allegedly violated, the thrust of the allegations indicate that Section 11, Article I of the Ohio Constitution was the major basis of plaintiff's claims.  This section provides:
"Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge

the liberty of speech, or of the press. * * *"

This constitutional provision does not set forth an accompanying cause of action for a violation of the right of free speech. And, parenthetically, no other constitutional provision relied upon by the appellant provides an individual cause of action for an alleged violation of such constitutional right. Additionally, the Ohio General Assembly has not authorized such an action. Further, this court has never pronounced it to be the common law of this state that a public employee has a private cause of action against her employer to redress alleged violations by her employer of policies embodied in Ohio's Constitution. This is precisely the new common law the appellant seeks this court to pronounce, even if other administrative remedies (adequate or inadequate) might also be available. Appellant argues that any such alternative remedies only supplement, and do not replace, a plaintiff's right to bring a civil action to enforce constitutional rights.

In resolving the issues presented, we must be mindful of some general principles regarding the exercise of judicial discretion. When rights are invaded or violated, the law generally provides a remedy. When rights are not expressly provided by statutory law, courts may in given instances fill the void, looking to any legislative policy or statutory scheme within the area of concern. Even though this court is empowered to grant relief not expressly provided by the legislature, and may grant relief by creating a new remedy, we shall refrain from doing so where other statutory provisions and administrative procedures provide meaningful remedies.

The United States Supreme Court has addressed its judicial role in the type of case presently before us on a number of occasions. One of the more recent cases is that of Bush v. Lucas (1983), 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648, where the court considered whether a private claim for damages could be stated by a federal employee for an alleged violation of his First Amendment rights. In Bush, the plaintiff, a federal aerospace engineer, filed a complaint against his employer, the George C. Marshall Space Flight Center, to recover for alleged defamation and retaliatory demotion. He alleged that his demotion was the result of his having made statements to the news media which were highly critical of the center.

Justice Stevens, writing for the court, assumed for purposes of the court's decision that the federal employee's First Amendment rights had been violated by adverse personnel action. The court also assumed that the civil service remedies available to him were not as effective as a tort-damages remedy and would not fully compensate him for the harm he had allegedly suffered. Additionally, the court acknowledged that Congress had not expressly authorized the damages remedy sought by the petitioner, nor had Congress expressly precluded the creation of such remedy. The court then proceeded to review all the factors relevant to the petitioner's claim that a right of private action should be made available for the violation of his constitutional rights. In this regard the court observed:

"Given the history of the development of civil service remedies and the comprehensive nature of the remedies currently available, it is clear that the question we confront today is

quite different from the typical remedial issue confronted by a common-law court.  The question is not what remedy the court should provide for a wrong that would otherwise go unredressed.  It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue.  * * *" 462 U.S. at 388, 103 S.Ct. at 2416-2417, 76 L.Ed.2d at 664.

The Bush court in essence concluded that it must make a remedial determination, paying particular heed to any special factors counseling hesitation before authorizing a new remedy. Accordingly, the court stated that:

"Petitioner asks us to authorize a new nonstatutory damages remedy for federal employees whose First Amendment rights are violated by their superiors.  Because such claims arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States, we conclude that it would be inappropriate for us to supplement that regulatory scheme with a new judicial remedy."  462 U.S. at 368, 103 S.Ct. at 2406, 76 L.Ed.2d at 651.

The United States Supreme Court has generally exercised extreme caution in reviewing cases asserting a "constitutional tort" theory cause of action.  Such actions have been held viable against federal officials for a violation of Fourth Amendment rights (an illegal search and seizure by federal narcotics agents), Bivens v. Six Unknown Fed. Narcotics Agents (1971), 403 U.S. 388, 91 S.Ct. 1999; 29 L.Ed.2d 619; for a violation of Fifth Amendment rights (sex discrimination against a congressional employee), Davis v. Passman (1979), 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846; and for a violation of Eighth Amendment rights (failure to provide proper medical attention to a federal inmate), Carlson v. Green (1980), 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15.  In all these cases, sometimes referred to as "Bivens actions," the Supreme Court found no "special factors counselling hesitation in the absence of affirmative action by Congress," Bivens, 403 U.S. at 396, 91 S.Ct. at 2005, 29 L.Ed.2d at 626; no explicit statutory prohibition against the relief sought, and no exclusive statutory alternative remedy, Davis, 442 U.S. at 246-247, 99 S.Ct. at 2278, 60 L.Ed.2d at 863; Carlson, 446 U.S. at 18-20, 100 S.Ct. at 1471-1472, 64 L.Ed.2d at 23-25.

Various state courts presented with the legal issue of the validity of an individual's cause of action for damages for an alleged violation of constitutionally protected rights have followed the rationale of the Bush decision.  The plaintiff in Walt v. State (Alaska 1988), 751 P.2d 1345, for example, was a state employee subject to the General Governmental Unit Collective Bargaining Agreement.  Plaintiff, development specialist for the Department of Commerce and Economic Development, was discharged as a result of remarks made at a conference at which the plaintiff represented that department. The plaintiff pursued a grievance through his collective bargaining representative, and was ultimately ordered reinstated.  Although the grievant was returned to work, a decision was soon made to eliminate funding for his position.

The plaintiff in Walt initiated legal action against the state and against several of his superiors at the department, asserting, inter alia, a claim under Section 1983, Title 42, U.S.Code for violation of his free speech and substantive due process rights, a claim for a violation of state statutory and personnel rules (based on an adverse employment action not related to merit), a tort claim for negligent and intentional infliction of emotional distress, and a public policy tort based on alleged retaliatory elimination of funding for his position.  Summary judgment in favor of the state was entered by the trial court and ultimately upheld by the Supreme Court of Alaska.

Of particular relevance to the instant case was the Alaska Supreme Court's disposition of plaintiff's tort claim implied from a violation of public policy.  The court cited the United States Supreme Court decision in Bush, noting that the court in that case found a cause of action should not be implied for violations of the First Amendment rights of a federal employee because of the comprehensive civil service remedies provided by Congress.  The court in Walt held:

"We think Bush is analogous to the instant case.  Here elaborate provisions were made available to Walt under the provisions of the CBA [Collective Bargaining Agreement], PERA [Public Employment Relations Act], and, to the extent applicable, the provisions of Alaska's State Personnel Act and Personnel Rules.  Taken together the foregoing provide a comprehensive scheme of employee rights and remedies. Recognition of an independent tort for violation of public policy would in our view conflict with the established law of public employee-employer labor relations in Alaska."  Id. at 1353, fn. 16.

See, also, Melley v. Gillette Corp. (1985), 19 Mass.App. 511, 475 N.E.2d 1227; Makovi v. Sherwin-Williams Co. (1989), 316 Md. 603, 561 A.2d 179; Cox v. United Technologies, Essex Group, Inc. (1986), 240 Kan. 95, 727 P.2d 456; and Phillips v. Babcock & Wilcox (1986), 349 Pa.Super. 351, 503 A.2d 36.

Appellant argues that the Bush rationale should not be applied to this case because the alternative remedies available to the plaintiff are not adequate and meaningful, and in any event the remedy she seeks should be in addition to other remedies provided by statute.

In reviewing the Ohio statutory law which could provide the plaintiff redress for her complaints, we look to R.C. Chapter 4112, creating the Civil Rights Commission ("CRC"), R.C. Chapter 4117, establishing the State Employment Relations Board ("SERB"), and R.C. Chapter 124, providing for the State Personnel Board of Review ("SPBR").  The latter chapter dealing with the SPBR provides little remedy for the plaintiff since she is employed pursuant to a collective bargaining agreement, and since R.C. 4117.10(A) divests the SPBR of jurisdiction where such an agreement exists.

However, R.C. Chapter 4112 does provide the plaintiff with some meaningful available relief.  R.C. 4112.02 provides that: "It shall be an unlawful discriminatory practice: (A) For any employer, because of the race, color, religion, sex, natural origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to

discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

After complaint and hearing, if the commission finds that the respondent has engaged in any unlawful discriminatory practice, the commission "shall issue and, subject to the provisions of Chapter 119. of the Revised Code, cause to be served on such respondent an order requiring such respondent to cease and desist from such unlawful discriminatory practice and to take such further affirmative or other action as will effectuate the purposes of sections 4112.01 to 4112.08 of the Revised Code, including, but not limited to, hiring, reinstatement, or upgrading of employees with, or without, back pay * * *."  R.C. 4112.05(G).

As further remedy for a person claiming civil rights violations, R.C. 4112.06(A) provides that "[a]ny complainant, or respondent claiming to be aggrieved by a final order of the commission, including a refusal to issue a complaint, may obtain judicial review thereof, and the commission may obtain an order of the court for the enforcement of its final orders * * *."

The record before the trial court shows that the plaintiff had filed four complaints with the CRC against the defendant board.  The first was filed on March 1, 1986, charging that:

"I.   I am a Black person.  Since Oct. 28, 1985, I have been constantly harassed in all aspects of my job.  On Feb. 7, 1986, I was physically assaulted by my Supervisor, Sue Givens.

"II.  Sue Givens, Caucasian Supervisor and Assistant Principal, refuses to meet with me to resolve accusations made against me.

"III. I believe I have been unlawfully discriminated against due to my race, Black, because (a) * * * I am the only Black teacher."

The second complaint filed by the plaintiff in the CRC was dated May 8, 1986.  The complaint primarily charged unlawful discrimination because of the plaintiff's race, and specifically charged that she was being harassed because of her race and being treated unfairly, i.e., Caucasian teachers were not similarly treated.

The third complaint was filed on September 26, 1986, and charged that the plaintiff was retaliated against because she had filed the complaints against the board.

The fourth complaint, filed on April 17, 1989, again charged that plaintiff was being discriminated against because of her race, and more specifically that she had been suspended for three days by her director.  Plaintiff stated that "I believe that my handicap [depression] and race was [sic] the determining factors in his decision to suspend me and that all other reasons are pretextual."

In reviewing the instant record, it may be reasonably concluded that a significant basis for the allegations contained in plaintiff's complaint were harassment claims with racial connotations.  Therefore, we conclude that the plaintiff could, and did, pursue some of her available remedies through R.C. Chapter 4112 for the claimed unlawful activities of her employer.

The plaintiff, as a public employee, also has remedies

available for bringing charges and grievances against her employer through the provisions of R.C. Chapter 4117, the Public Employees' Bargaining Act, and SERB. First, this chapter grants public employees the specific right to join, or not to join, any employee organization of their own choosing (R.C. 4117.03[A][1]), and authorizes representation by such employee organization (R.C. 4117.03[A][3]), collective bargaining for wages, hours, terms and other conditions of employment, and entering into collective bargaining agreements (R.C. 4117.03[A][4]), such as was entered into here by the defendant board and the plaintiff's employee representative organization, Stark County Educators' Association for the Training of Retarded Persons.

After negotiations between the plaintiff's employee bargaining organization and the board, a collective bargaining agreement was entered into, which at Article XXIII provides for a "Grievance Procedure," whereby a member of the bargaining unit may allege that there has been a breach, misinterpretation, or improper application of the agreement.

Plaintiff's civil action here, in addition to having some civil rights aspects, is a result of her complaints concerning allegedly unfair treatment with respect to such items as the discipline taken against her by her employer, the suitability of her job-related physical facilities, the availability of equipment, job performance evaluations, the requirement of medical verification for sick leave, and the content of her employee personnel file. Clearly, all these subjects are treated by the collective bargaining agreement.3 In her deposition testimony, the plaintiff acknowledged that she had filed a number of grievances under the collective bargaining agreement during the course of her employment and that she had prevailed only in some of these grievances. So we may reasonably conclude that most of these employment-related complaints may be covered by the grievance procedures that are set forth within the collective bargaining agreement.

While the remedies provided the plaintiff here through the administrative process of a hearing before the CRC and through the arbitration process under the collective bargaining agreement do vary from the remedies that might be available through a civil proceeding, such difference shall not be controlling where, in the totality, it may be concluded that the public employee has been provided sufficiently fair and comprehensive remedies. In Bush, the United States Supreme Court clearly evidenced that alternative avenues providing a less than complete remedy for the wrong suffered were not sufficient to warrant the recognition of a cause of action for damages arising from a constitutional violation. 462 U.S. at 388, 103 S.Ct. at 2417, 76 L.Ed. 2d at 664.

The United States Supreme Court in Bush found that the question whether to augment a remedial scheme carefully constructed by Congress did not turn merely on a determination that existing remedies failed to provide complete relief. Instead, the court asserted that the decision to create a Bivens-style remedy in those circumstances turned on a careful evaluation of relevant policy considerations. The court gave special deference to Congress' ability to weigh the policy considerations relevant to a determination of whether to create

a remedy for a harm suffered, and, in the end, deferred to Congress' superior expertise, "convinced that Congress [was] in a better position to decide whether or not the public interest would be served by creating" a Bivens-style remedy in the case.  Bush, 462 U.S. at 390, 103 S.Ct. at 2417, 76 L.Ed.2d at 665.

In like manner, it is not incumbent upon this court to engage in the type of comparative analysis of the relative merits of various remedies that is invited by appellant. Rather, the more appropriate course for this court is to defer to the legislative process of weighing conflicting policy considerations and creating certain administrative bodies and processes for providing remedies for public employees such as appellant.

We hold, therefore, that public employees do not have a private cause of civil action against their employer to redress alleged violations by their employer of policies embodied in the Ohio Constitution when it is determined that there are other reasonably satisfactory remedies provided by statutory enactment and administrative process.

Finally, the appellant argues that the lower court here should be reversed upon the authority of Greeley v. Miami Valley Maintenance Contrs., Inc. (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, wherein this court recognized a cause of action for wrongful discharge in violation of public policy.  However, the issue presented in Greeley is not directly on point with the issue presented here.  The narrow issue in that case was whether an employee discharged in violation of R.C. 3113.213(D), prohibiting an employer from discharging or disciplining an employee on the basis of a wage withholding order, could maintain a wrongful discharge action where the statute did not expressly authorize such an action.  The court limited its holding to a public policy enunciated in a statute, and not the Ohio Constitution.  Reasoning that the legislature could not have intended to leave an employee discharged in violation of such a statute without an effective remedy, a majority of this court held "that public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute."  49 Ohio St.3d at 234, 551 N.E.2d at 986.

The facts and issues in Greeley are distinctly dissimilar from those presented in this case, and are accordingly not controlling.

Concluding, we hold that the courts below properly decided that there was no private constitutional remedy for the plaintiff-appellant's claims in that the Ohio Constitution itself does not provide for a civil damage remedy.  Further, in that there are rather extensive legislative and regulatory schemes providing for the bringing of complaints and charges emanating from civil rights violations, and legislative and regulatory schemes governing employment relationships, and in this regard, the presence here of a collective bargaining agreement with grievance procedures, the plaintiff has sufficiently broad and inclusive remedies for her alleged wrongs.

For all the above reasons, the judgment of the court of appeals is hereby affirmed.

Judgment affirmed.

Moyer, C.J., Sweeney, Wright and H. Brown JJ., concur.

Resnick, J., concurs in the syllabus and judgment.

Douglas, J., concurs in judgment only.

FOOTNOTES:

1 Although the specific Ohio constitutional provisions which were alleged to have been violated were not specifically set forth within the complaint, the briefs of both parties herein allude to Section 11, Article I, the right of free speech. Also, the appellant in her brief in this court argues that she had also relied upon Sections 1, 2, 3, 14 and 16 of Article I of the Ohio Constitution, which respectively provide protections regarding the right to freedom, life, liberty, happiness and safety and the protection of property; the equal protection and benefit clause; the freedom of assembly and grievance clause; the search and seizure clause; and the due process and the open courts clause.

2 Among the specific incidents of harassment cited by the plaintiff-appellant in her deposition were:

1. She has been accused by her supervisors of not performing her job.

2. She was watched by her supervisors, and was told by supervisors that they were watching her and would "get" her if she was out of her classroom.

3. She was spoken to by her supervisors about being absent from her assigned classroom, was asked "[w]hy were you out, what were you doing?" and was advised, "[y]ou shouldn't be out of your classroom."

4. She was told that if she failed to attend meetings, the supervisor would "get" her for that.

5. Her job performance evaluations have been "low."

6. She has received criticism for her failure to complete paper work in a timely fashion.

7. Requests for additional assistance with her class have been denied.

8. She writes memos and they are not addressed by her director. Appellant, for example, authored at least four memoranda complaining of students being sent to her class with "dirty faces"; those memoranda, she contends, were ignored. Similarly, Provens testified that memoranda complaining of the size of her classroom did not result in the action desired.

9. She was singled out for unduly harsh treatment when she was recommended by her supervisor for -- but apparently did not receive -- disciplinary action when a student in her care fell from a "potty" chair to the floor.

10. Satisfactory action was not taken when another employee allegedly assaulted her. Provens pursued civil action in that instance and the matter has since been resolved out of court.

11. Provens believes that she was harassed or discriminated against by the board's superintendent, who apparently issued unfavorable rulings in some of the appellant's many grievances.

12. The board decided to honor the request of a student's parents that the student not be placed in appellant's classroom, for the stated reason that the parents did not desire their child to have a black teacher.

13. Provens was removed from a "rotating" classroom to a "self-contained" classroom "where you don't mix with people [other instructors] at all."

14. On the occasion of Black History Month, she took offense at the suggestion by her supervisor that displaying the slogan "We shall overcome" was an effort to intimidate another of her supervisors.

15. The inclusion in her personnel file of complaints lodged against her.

16. She believes a supervisor made an attempt to go through her desk.

17. Certain of her supervisors do not engage appellant in friendly conversations, as they do with other staff members. Her colleagues, as well, tend to shun appellant; her continuous complaints to appellee, she claims, set her "apart."

3  See, e.g., Section 2, Article XI, "Corrective Action" (providing that "[n]o employee shall be reduced in pay, * * * suspended, discharged or removed except for just cause" and that "no other form of disciplinary action will be taken against any employee except for just cause"); Section 3, Article XI, "Facilities"; Article XII,"Evaluation Procedure"; Article XIII, "Personnel Files" (granting employees the opportunity to review personnel files and to submit memoranda in rebuttal to any article included in the file with which the employee takes exception); and Section 1, Article XVI, "Staff Absences" -- "Reporting Off Sick."

Douglas, J., concurring in judgment only.   I concur in the judgment of the majority.  Appellant is a member of a bargaining unit with a valid enforceable collective bargaining agreement in place.  Article XXIII of the agreement provides for a grievance procedure.  An employee has no more right to ignore a collective bargaining agreement than does an employer.  I would affirm the judgment of the court of appeals on that basis.