876 A.2d 375

**CITY OF PHILADELPHIA OFFICE OF HOUSING AND COMMUNITY DEVELOPMENT, Appellee,**

v.

**AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, LOCAL UNION NO. 1971, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 4, 2003.

Decided June 21, 2005.

Reargument Denied Sept. 2, 2005.

Jennifer B. Liebman, Esq., Thomas W. Jennings, Esq., for American Federation of State, Local and Municipal Employees, Local 1971.

Eleanor N. Ewing, Esq., Philadelphia, for City of Philadelphia Office of Housing and Community Development.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## *OPINION*

Justice EAKIN.

The City of Philadelphia Office of Housing and Community Development (OHCD), is charged with distributing and overseeing housing funds received from state and federal sources. In 1997, OHCD initiated the Settlement Grant Program, designed to provide grants to middle and low income families to assist with the purchase of new homes. To qualify under the Program, an inspection of the home was required. Under the terms of the Collective Bargaining Agreement (CBA) between OHCD and the American Federation of State, Local, and Municipal Employees, Local Union No.1971, those inspections were to be performed by Union employees. At the inception of the Program, the Union had two "housing rehabilitation inspectors" among its 33 employees, capable of performing such work.

Instead of assigning the inspections to Union workers, OHCD entered into three competitively-bid contracts with non-Union firms to perform the work. In 1998, the Union learned of the non-Union contracts, and filed a grievance against OHCD on May 20, 1998, for violating the subcontracting provision of the CBA.

Article XXIX of the CBA, entitled "subcontracting," states in relevant part:

1. The employer may contract out OHCD functions, services, locations, or sites at or in which work is presently performed by Employees in the Bargaining Unit represented by the Union only if:

a. the work can be performed more economically by a Union contractor (or other contractor in the event no Union contractor is available) as opposed to Employees represented by the Union; and

b. the Employer shall give the Union no less than 30 days written notice before issuing a formal request for proposal or a formal bid solicitation package in order to offer the Union an opportunity to meet and discuss whether the work can be performed more economically by a Union contractor (or other contractor in the event no Union contractor is available) as opposed to Employees represented by the Union.

CBA, at 39.

The Union sought an order instructing OHCD to cease and desist subcontracting to non-Union workers, and directing OHCD to comply with the CBA in the future. In addition, the Union sought an award for the loss of work opportunities. On September 10, 1998, the Union filed a Demand for Arbitration, requesting an arbitrator "[m]ake all affected employees whole or, if no employees were adversely affected, make Union whole for loss or intrusion of jurisdiction." Demand for Arbitration, at 1. The parties stipulated the issues to be submitted for arbitration, although OHCD argued the outsourcing did not violate the CBA.

On October 17, 2001, the arbitrator found the three non-Union contracts violated the CBA, and ordered OHCD to "cease and desist from any future contracting of such work. . . ." Opinion and Award, 10/17/01, at 20. The arbitrator also found the "viability" of the Union had been damaged as a result of OHCD's breach. Although finding no Union employees were injured, the two Union inspectors having been working full-time throughout, the arbitrator awarded the Union an "amount representing the number of inspections contracted

times the cost of bargaining unit inspectors to perform that work for the period of time in which OHCD [ ] retained [the] contractors." *Id.* In other words, the monetary award equaled the wages Union workers would have been paid for performing the inspections.

On November 21, 2001, OHCD filed a Petition to Vacate the Arbitration Award in the Court of Common Pleas of Philadelphia County. That court, citing its "circumscribed" role in reviewing arbitration awards, denied OHCD's petition and affirmed the arbitrator's award. OHCD then appealed to the Commonwealth Court, which reversed the award, finding "the arbitrator's remedy did not draw its essence from the collective bargaining agreement." *City of Philadelphia Office of Housing and Community Development v. AFSCME, Local Union No.1971,* No. 380 CD 2002, unpublished memorandum at 10 (Pa.Cmwlth. filed January 15, 2003). This Court granted review to determine whether the Commonwealth Court correctly determined that the damages awarded by the arbitrator were punitive and, therefore, unlawful.

This Court has defined punitive damages as compensation awarded to punish a party for actions "of such an outrageous nature as to demonstrate intentional, willful, wanton or reckless conduct...." *SHV Coal, Inc. v. Continental Grain Co.,* 526 Pa. 489, 587 A.2d 702, 704 (1991) (citing *Pittsburgh Outdoor Adv. Co. v. Virginia Manor Apartments, Inc.,* 436 Pa. 350, 260 A.2d 801 (1970)). We have not previously found punitive damages to be a proper award by an arbitrator for a breach of a collective bargaining agreement; however, the Superior Court, relying on precedent from other jurisdictions, has allowed such an award, commenting: "[a]lthough punitive damages are not generally available under collective bargaining agreements, if the agreement is silent as to remedies, arbitrators can award punitive damages." *Phillips v. Babcock & Wilcox,* 349 Pa.Super. 351, 503 A.2d 36, 37 n. 1 (1986) (citing *Local 416, Sheetmetal Workers Int'l. Ass'n (AFL–CIO) v. Helgesteel Corp.,* 335 F.Supp. 812 (W.D.Wis.1971), *rev'd by* 507 F.2d 1053 (7th Cir.1974)).

Some courts have determined that absent an express provision regarding punitive damages, the award of such damages is improper. *See, e.g., Island Creek Coal Company v. District 28, United Mine Workers of America,* 29 F.3d 126, 129 (4th Cir.1994)(leaving open issue of whether in absence of provision allowing punitive damages, such damages may be imposed where willful and wanton conduct is present); *College Hall Fashions, Inc. v. Philadelphia Joint Board Amalgamated Clothing Workers of America,* 408 F.Supp. 722, 727 (E.D.Pa. 1976). Other courts have taken the approach that punitive damages are not *per se* unavailable as a remedy for the breach of a collective bargaining agreement. These courts have found an arbitrator's award of punitive damages to be permissible, however, only where the agreement itself provides for such damages, and/or where there is proof of willful and wanton misconduct.[1] *See, e.g., Bacardi Corp. v. Congreso de Uniones Industriales de Puerto Rico,* 692 F.2d 210 (1st Cir. 1982); *Howard P. Foley Co. v. International Brotherhood of Elec. Workers, Local 639,* 789 F.2d 1421 (9th Cir.1986). Finally, some courts have suggested that punitive damages are available in the absence of any contractual prohibition on their award. *See Local 416 Sheetmetal Workers Int'l Assoc. v. Iron Workers Local 498,* 335 F.Supp. 812 (W.D.Wis.1971), rev'd on other grounds, 507 F.2d 1053 (7th Cir.1974); *Phillips v. Babcock & Wilcox,* 349 Pa.Super. 351, 503 A.2d 36 (1986). As this appeal involved punitive damages assessed against a Commonwealth agency, we leave for another day which of the three camps would apply for a non-governmental entity.

In this case, the arbitrator based the damages award against a Commonwealth agency on wages paid to the hypothesized Union workers to repair the "vitality" of the Union—the Union calculated the sum at "roughly $900,000." R.R., at 130a. As the Commonwealth Court correctly noted, the Un-

---

1. At least one arbitrator has cautioned that the "[p]ower to award punitive damages is a heady wine, however, which carries with it an equally potent obligation and abiding responsibility to invoke the remedy with great care and extreme caution...." *Seaboard World Airlines,* 53 LA 1056, 1060 (1969), cited in Elkouri & Elkouri, *How Arbitration Works,* 405–06 (4th Ed.).

ion would never have received these wages; *members* might have received those wages, but the Union itself would have received only additional dues from prospective new Union members. With only two qualified housing inspectors in the Union at the time, who undisputedly remained fully employed throughout the period, it is speculative how many additional members could have been recruited into the Union to undertake this workload; the Union had not added any additional inspectors for the preceding five years. Accordingly, the award fashioned by the arbitrator would give the Union a windfall of almost $30,000 per current member. This did not make the Union whole, but impermissibly punished OHCD.

The arbitrator's award of punitive damages against OHCD, a Commonwealth entity, cannot stand because it exacts retribution on the shoulders of blameless or unknowing taxpayers who would bear the brunt of the award. Specifically, our Court in *Feingold v. Southeastern Pennsylvania Transportation Authority*, 512 Pa. 567, 517 A.2d 1270, 1276–77 (1986), held that it is against the public policy of our Commonwealth to award punitive damages against a Commonwealth agency. Noting that government agencies have long been exempt from the imposition of punitive damages, *see Hermits of St. Augustine v. County of Philadelphia*, 4 Clark 120, 7 Pa.L.J. 124 (1847), our Court echoed the concerns of the United States Supreme Court that punitive damages imposed on a municipality were, in effect, a windfall to a fully compensated plaintiff and are likely accompanied by an increase in taxes or a reduction of public services, citing to *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 263, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). *Feingold*, at 1276–77. Therefore, we conclude it was inappropriate for the arbitrator to award such damages against the taxpayers of this Commonwealth, and we affirm the Commonwealth Court.

Jurisdiction relinquished.

Former Justice LAMB did not participate in the decision of this case.

Justice SAYLOR files a concurring opinion.

Justice NIGRO files a dissenting opinion.

Justice SAYLOR, concurring.

I have previously expressed my reservations regarding some of the semantics being employed by the Court in the labor arbitration setting, *see, e.g., Greene County v. United Mine Workers of Am.*, 578 Pa. 347, 364–65, 852 A.2d 299, 310 (2004) (Saylor, J., concurring), and have similar difficulties here. Presently, the majority's analysis strongly suggests a conclusion that the arbitration award under review is unreasonable, since the monetary damages were calculated in direct correlation to income to which the Union itself was never entitled, and therefore, bear a highly speculative relationship to the Union's actual injury subject to redress. *See* Majority Opinion, *slip op.* at 5. Under the Court's prevailing articulation of the essence test, however, courts are precluded from disturbing an arbitration award based upon manifest unreasonableness. *See Pennsylvania Game Comm'n v. SCSC (Toth)*, 561 Pa. 19, 27 n. 7, 747 A.2d 887, 891 n. 7 (2000) (stating that "the essence test does not permit an appellate court to intrude into the domain of the arbitrator and determine whether an award is 'manifestly unreasonable'"); *State System of Higher Educ. (Cheyney Univ.) v. State College Univ. Prof. Ass'n (PSEA–NEA)*, 560 Pa. 135, 148–49, 743 A.2d 405, 413 (1999).

The Commonwealth Court and the present majority of this Court avoid the facial tension between the vacating of the arbitration award under review and the essence test by characterizing the award as punitive. I find no evidence, however, that the intent motivating the award was of any such character. Rather, it appears to me that the arbitrator was faced with a situation in which, pursuant to an express make-whole-remedy submission, he found it appropriate to compensate the Union for an injury that he legitimately deemed to be substantial. The difficulty, in my view, is not that the arbitrator set out to punish the City or that his make-whole objective was outside the scope of the collective bargaining agreement or the submission, but rather, that the arbitrator lacked any effective

methodology for quantifying damages in relation to the harm suffered by the Union. I therefore regard the courts' characterization of the award as punitive as merely representing a judicial pronouncement grounded in speculation on the same order as that engaged in by the arbitrator.[1]

In such circumstances, I am able to concur in the disposition of this case solely because I believe (as I indicated in Greene County) that, at least in the context of certain public-sector labor cases, the Court has effectively supplanted the essence test with a manifest unreasonable standard. See Greene County, 578 Pa. at 364–65, 852 A.2d at 310 (Saylor, J., concurring). I also believe that the speculative methodology utilized by the arbitrator in awarding so great a sum to the Union in the present situation fails to comport with the latter standard.

Justice NIGRO, dissenting.

Unlike the majority, I would reverse the order of the Commonwealth Court as I believe that the arbitrator's award in this case must be affirmed under the deferential essence test that is traditionally applied in the labor arbitration setting. See State System of Higher Education (Cheyney Univ. v. State College Univ. Prof. Ass'n (PSEA–NEA)), 560 Pa.135, 743 A.2d 405, 413 (1999). Indeed, like Justice Saylor, I see no evidence in the record that the arbitrator's intent in fashioning the remedy at issue was punitive. To the contrary, it appears clear that the arbitrator was merely attempting to make the union whole for injuries it found the union to have suffered as

---

1. Cf. Board of Educ. of Central Sch. Dist. No. 1 v. Niagara–Wheatfield Teachers Ass'n, 46 N.Y.2d 553, 415 N.Y.S.2d 790, 389 N.E.2d 104, 106 (1979) (cautioning that the case law "should not be interpreted as an indication that whenever compensatory damages are somewhat speculative they are necessarily punitive ... Ritualistic incantations of 'punitive damages' will not suffice to vacate an arbitration award where discretion is used in the computation of damages. Only where the damages are genuinely intended to be punitive should the courts vacate the award." (emphasis added)); Carteret County v. United Contractors of Kinston, Inc., 120 N.C.App. 336, 462 S.E.2d 816, 823 (1995) ("Because the arbitrators did not clarify their award, plaintiff's contention that the award contains impermissible consequential and punitive damages is speculation.").

a result of the City's violation of the parties' collective bargaining agreement. As such, while I might agree in principle that the award was excessive, I nevertheless conclude that it was "rationally derived from" the collective bargaining agreement and must therefore be upheld. *Id.* at 413.

I further note that I do not agree with Justice Saylor that the facts of this case warrant application of the modified essence test, which this Court has stated requires moderation of "the usual degree of deference to be accorded an arbitrator's award ... in a situation in which the arbitrator's interpretation of the agreement led to the governmental employer relinquishing essential control over the public enterprise, i.e., those powers essential to its ability to discharge its functions." *Greene County v. District 2, United Mine Workers of America,* 578 Pa. 347, 852 A.2d 299, 308 (2004). It is important to note that this Court has typically only applied this modified test in situations in which an arbitrator has reinstated an employee whom the public employer has discharged in furtherance of its core public functions. *See, e.g., Greene County, supra* (modified test applies when arbitrator reinstates employee whom Children and Youth Services has discharged for poor record-keeping practices); *City of Easton v. American Federation of State, County and Municipal Employees,* 562 Pa. 438, 756 A.2d 1107 (2000) (modified test applies when arbitrator reinstates employee whom City has fired for committing theft); *Office of Attorney General v. Council 13, American Federation of State, County and Municipal Employees, AFL–CIO,* 577 Pa. 257, 844 A.2d 1217 (2004) (modified test does not apply when arbitrator reinstates employee whom the Office of the Attorney General discharged for off-duty misconduct). Moreover, I would not apply it here, where the arbitrator did not reinstate a discharged employee and it simply cannot be said that the City's actions in entering into three competitively-bid inspection contracts with non-Union firms was in proper furtherance of its core public functions.