The PHILADELPHIA HOUSING
AUTHORITY, Appellant

v.

AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EM-
PLOYEES, DISTRICT COUNCIL 47,
LOCAL 2187, AFL–CIO.

Commonwealth Court of Pennsylvania.

Argued March 11, 2008.
Decided April 2, 2008.

Mary Theresa Metzler, Philadelphia, for appellant.

Ralph J. Teti, Philadelphia, for appellee.

BEFORE: PELLEGRINI, Judge, SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge PELLEGRINI.

The Philadelphia Housing Authority (Authority) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) denying its motion to vacate an arbitrator's award awarding back pay to nine Union members/Housing Rehabilitation Specialists [1] who did not receive the same pay raises as three other Housing Rehabilitation Specialists and ordering the Authority to reimburse the Union for all counsel fees expended for the arbitration. Before this Court is whether the arbitrator exceeded his authority in making his award because the award was punitive and awarding the Union counsel fees.

The history of this case is as follows. In June 1995, the Authority's Associate Executive Director for Modernization requested a new labor classification, Housing Rehabilitation Specialists II(HRS), and the position was approved at pay grade D–24. Three individuals employed as HRS Is—Barr, Montgomery and Parodi—were selected for the position and promoted to the HRS II position. When the Union learned of these promotions in 1997, it filed a grievance on behalf of nine other employees,[2] who were also HRS, on the basis that the Authority violated the parties' Collective Bargaining Agreement (CBA)[3] in the manner in which it promoted the individuals.[4] Arbitrator Loewenberg sustained the Union's grievance and, on February

1. The American Federation of State, County and Municipal Employees, District Council 47, Local 2187, a.k.a. the Union, is the exclusive collective bargaining representative of a unit of employees of the Authority, including its Housing Rehabilitation Specialists.

2. Those employees were T. McIntosh, J. Modres, G. Paladino, P. Silverman, G. Smith, J. Wright, J. Nunes, D. Smith and R. Caliman.

3. The CBA governs the terms and conditions of employment for Authority employees repre-

sented by the Union and provides for a grievance and arbitration procedure for raising and resolving disputes between the Union and the Authority.

4. According to the Union's brief, the Authority failed to publicize the available positions. Article 37(C) of the CBA requires that, "[a]ll promotional opportunities for positions covered by this agreement shall be posted for at least fifteen (15) calendar days."

16, 1999, ordered the Authority to pay each grievant an equal share of the sum of the difference between HRS I and HRS II pay for the three positions for the period between June 24, 1995, and July 5, 1997.[5] In September 1999, Barr and Parodi[6] remained employed at pay grade D–24 while the nine other employees who were classified as HRS 1 remained at a lower pay grade and classification of D–21.

Because the classification and pay grade continued to be a disputed matter between the parties, on November 22, 1999, the Authority and the Union entered into a settlement agreement in which the parties agreed to "red-circle" or freeze Barr and Parodi at their current annual pay rate "until such time as the reclassified Housing Specialist II salary (D–23) equals or exceeds their current salary (Pay Grade D–24)." The nine grievants were to receive back pay differential at the D–24 pay grade rate for the period September 5, 1997, through May 5, 1998, and were reclassified to HRS II status effective October 1, 1999, at pay grade D–23.

After learning that Barr and Parodi had not been red-circled, in 2001, the Union filed a grievance alleging that the Authority had not complied with the red-circling of Barr and Parodi as agreed in the settlement agreement. It sought back pay differential for all HRS IIs between the D–23 and D–24 rate paid to Barr and Parodi. Arbitrator Kasher found that the Authority had inadvertently failed to red-circle Barr and Parodi and that the failure to do so was not deliberate. Additionally, Arbi-

trator Kasher found that other HRS IIs had not been financially harmed by the overpayments to Barr and Parodi and specifically denied the Union's request that they be awarded back pay because it would be unwarranted. However, he ordered the Authority to cease and desist from future violations of the settlement agreement. No appeal was taken from that award.

Five years later, on July 14, 2006, the Union filed a grievance[7] alleging that the Authority had still not frozen Barr and Parodi's pay and that the Authority continued to pay certain HRS IIs at the D–24 rate while paying other HRS IIs at the D–23 rate despite three arbitration awards addressing the payment of these employees. At the hearing before Arbitrator Skonier, the parties stipulated to the following facts:

- Counsel for the Authority instructed the compensation specialist to red-circle Barr and Parodi, but that individual was no longer employed by the Authority;

- Barr and Parodi continued to receive general across-the-board wage increases rather than being red-circled;

- Barr and Parodi were being paid at a D–24 pay grade level and other HRS IIs were being paid at a D–23 pay grade level.

Arbitrator Skonier stated in his decision that although it was incumbent on the Authority to make sure that the terms of the settlement agreement were followed

---

5. Arbitrator Loewenberg's decision and award was cited in Arbitrator Skonier's decision, but has not been made part of the record.

6. Mr. Montgomery no longer held the position of Housing Rehabilitative Specialist.

7. In an attempt to determine if the Authority was complying with Arbitrator Kasher's award, the Union requested pay records from the Authority; however, the Authority did not provide them, and the Union filed an unfair labor practice charge with the Pennsylvania Labor Relations Board. Only after that action was filed were the pay records produced. Only July 10, 2006, the Authority provided the requested pay records.

and its failure to do so could be considered intentional, willful, wanton or reckless conduct, he determined that the parties demonstrated their intent to have the affected grievants made whole by submitting the matter to the Union and then to arbitration for resolution pursuant to the CBA.

Arbitrator Skonier then issued a three-part remedy. First, he directed the Authority to cease and desist from violating the terms of the settlement agreement and to certify that Barr and Parodi had been red-circled and would remain so until the pay rate of the other HRS IIs equaled or exceeded their rate of pay. Next, he directed the Authority to pay monetary damages to the nine grievants who were rated at the D–23 pay grade and ordered that the damages be calculated by the difference between the D–24 pay grade paid to Barr and Parodi and the D–23 pay grade paid to the HRS IIs for the period July 14, 2006, the date of the grievance, until the date that Barr and Parodi were "truly red-circled." Finally, the arbitrator ordered the Authority to reimburse the Union for its counsel fees which it expended for the arbitration before him.

The Authority filed an appeal with the trial court arguing that the award exceeded the arbitrator's power because the award was punitive. The trial court affirmed the arbitrator's decision noting that the Authority continued to give Barr and Parodi pay increases on an annual basis for nearly a decade despite the settlement agreement. The trial court then found that the arbitrator's award was "not punitive in nature as it was not to punish [the Authority] for any potential wanton or reckless behavior, but rather to make the Union whole for having to litigate these issues for a lengthy period of time solely due to [the Authority's] violation of the

CBA." (Trial court's decision at 5.) This appeal by the Authority followed.

█ The Authority first contends that the arbitrator's award did not draw its essence from the CBA, and the arbitrator exceeded his authority under the terms of the CBA by awarding monetary payments to the grievants because the Union never established that the grievants were harmed as they received the salary that they should have received. Because the grievants were not harmed, it contends that the award was an impermissible award of punitive damages. *City of Philadelphia Office of Housing and Community Development v. AFSCME Local Union No. 1971 (OHCD)*, 583 Pa. 121, 876 A.2d 375 (2005).

█ The proper standard of review of a labor arbitration award under the Pennsylvania Public Employe Relations Act[8] is the essence test. *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA)*, 560 Pa. 135, 743 A.2d 405 (1999); *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educational Support Personnel Association, PSEA/NEA*, —— Pa. ——, 939 A.2d 855 (2007). The essence test uses a two-prong analysis: (1) the reviewing court must determine whether the issue falls within the terms of the CBA and, if so, (2) the reviewing court must determine whether the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. *Cheyney University*, 560 Pa. at 150, 743 A.2d at 413. In *Cheyney*, our Supreme Court noted that a reviewing court should not inquire into whether the arbitrator's decision is reasonable or even manifestly unreasonable, but whether the award may, in any way, be rationally de-

---

8. Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301.

rived from the agreement between the parties, "viewed in light of its language, its context, and any other indicia of the parties' intention." *Id., quoting Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA),* 473 Pa. 576, 594, 375 A.2d 1267, 1275 (1977), *citing Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir.1969). In addition, a court will only vacate an arbitrator's award "where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement." *Cheyney University,* 560 Pa. at 149–50, 743 A.2d at 413.

■ Recently, in *Westmoreland Intermediate Unit # 7,* our Supreme Court stated, *albeit* in a plurality opinion, that the federal public policy exception to the essence test should be applied to determine whether an award is grounded in the contract. This federal exception is very narrow both because it goes only to the remedy that the arbitrator awards and only in very narrow circumstances. Under this exception, courts will not enforce an arbitration award that is contrary to public policy and have stated, "the question of public policy is ultimately one for resolution by the courts." *W.R. Grace and Co. v. Local Union 759, International Union of the United Rubber, Cork, Linoleum and Plastic Workers of America,* 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983) (arbitration order that stopped voluntary compliance with the Civil Rights Act not against public policy). It is limited to situations where the arbitration award would violate "some explicit public policy" that is "well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Id. See also United Paperworkers International Union v. Misco, Inc.,* 484 U.S. 29,

42, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (arbitration order that found no just cause to terminate where the employee was operating heavy machinery while drinking was not against public policy); *Eastern Associated Coal Corporation v. United Mine Workers of America, District 17,* 531 U.S. 57, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000) (considerations of public policy, as reflected by Omnibus Transportation Employee Testing Act of 1991 and implementing regulations, did not preclude enforcement of labor arbitration award ordering employer to reinstate truck driver who had twice tested positive for marijuana).

■ Under the federal public policy exception, for a court to refuse to enforce an arbitration award, the remedy that the arbitrator orders must require the employer or the union to take some other action that would violate the law or be against clear public policy. However, if the award simply does not punish an illegal act, it does not fall within the exception, and a federal court would enforce the award. This exception does not go to the correctness of the resolution of the underlying merits, where the federal courts still defer, but only to the legality of the remedy.

Citing federal cases, in *City of Philadelphia Office of Housing and Community Development v. American Federation of State, County and Municipal Employees, Local Union No.1971,* 583 Pa. 121, 876 A.2d 375, our Supreme Court held that under the essence test, an arbitrator could not award punitive damages because government agencies have long been exempt from the imposition of punitive damages. In that case, the City of Philadelphia Office of Housing and Community Development (OHCD) only had two employees capable of performing that type of work required, home inspections, among its 33 employees. Instead of using union workers to perform the required inspections,

the OHCD bid out the work to non-union firms. The union filed a grievance for violating the collective bargaining agreement, and an arbitrator found a violation of that agreement. The arbitrator awarded monetary damages equal to the wages the union workers would have been paid for performing the inspections to be paid to the union to repair its "vitality" of the union; the union calculated the sum at "roughly $900,000." *Id.*, 583 Pa. at 126, 876 A.2d at 377. A petition to vacate was filed with the trial court, which was denied, and an appeal was taken to this Court. We reversed because the damages awarded were punitive, and the remedy did not draw its essence from the collective bargaining agreement. Our Supreme Court granted allocatur to determine whether the damages awarded by the arbitrator were punitive and unlawful.

In holding that the award of damages was punitive, the Court first stated that it had defined punitive damages as "compensation awarded to punish a party for actions 'of such an outrageous nature as to demonstrate intentional, willful, wanton or reckless conduct,' " *Id.*, 583 Pa. at 124, 876 A.2d at 376–377, and that it had not found punitive damages to be a proper award by an arbitrator for the breach of a collective bargaining agreement. The Court explained that under this set of facts, the award was not to make the members whole for lost wages, but to punish the behavior of the governmental employer. Because who was being punished was unknowing taxpayers, the Court stated, "[I]t is against the public policy of our Commonwealth to award punitive damages against a Commonwealth agency. Noting that government agencies have long been exempt from the imposition of punitive damages, [citation omitted], our Court echoed the concerns of the United States Supreme Court that punitive damages imposed on a municipality were, in effect, a

windfall to a fully compensated plaintiff and are likely accompanied by an increase in taxes or a reduction of public services." *Id.*, 583 Pa. at 126, 876 A.2d at 378.

There is no dispute here that Arbitrator Skonier's award finding that the Authority violated the settlement agreement by not red-circling Barr and Parodi's positions is subject to the essence test; the only dispute is whether the back pay award—the remedy—was punitive to bring it into the public policy exception to the essence test. If the award here was made to punish the Authority for not complying with the earlier award, it is punitive in nature, but if its primary purpose was to make the grievants whole until the Authority implemented the settlement agreement, then it is remedial in nature.

In the original grievance, Arbitrator Loewenberg awarded back pay to the grievants to correct preferential wage treatment to Barr and Parodi. To further resolve the situation, the Union agreed with the Authority to settle the dispute by red-circling Barr and Parodi's positions to equalize pay, but for close to 10 years, those two employees inexplicably continued to receive preferential wage treatment. Arbitrator Skonier found that because the whole purpose to red-circle Barr and Parodi's positions was to equalize their pay with grievants, to implement that agreement, the grievants should be awarded back pay from the date of the grievance to the date the Authority finally certifies that it has complied with the settlement agreement by red-circling those positions. Fashioning an award implementing what an employer agreed to do is remedial, not punitive in nature, and, in this case, it has the salutorious effect of making the grievants whole, and compliance with the settlement agreement, a remedy well within an arbitrator's power.

The Authority also argues that the arbitrator's award of counsel fees must be vacated because the award is punitive, and the CBA does not provide for such an award. In making his award, Arbitrator Skonier relied upon Article 9 of the CBA titled "Grievance Procedure," subsection "Expenses," which provides the following: "The expenses of filing for arbitration and the arbitrator's fee shall be borne equally by the parties." He reasoned "because of the unique history of this matter, I find it appropriate to award payment for attorneys' fees only that were incurred for this arbitration proceeding only." Because the CBA does not provide for the award of counsel fees by the prevailing party, and because Arbitrator Skonier did not find that punitive damages were in order, i.e., that there was intentional, willful, wanton or reckless conduct on the part of the Authority,[9] his award of counsel fees did not draw its essence of the CBA.

Accordingly, the order of the trial court is affirmed as to its award of back pay from July 14, 2006, until the date that the positions were certified as "red circled" by the Authority, but reversed as to its award of counsel fees.

### ORDER

AND NOW, this *2nd* day of *April,* 2008, the order of the Court of Common Pleas of Philadelphia County, dated August 6, 2007, is affirmed as to its award of back pay

from July 14, 2006, until the date that the positions were certified as "red circled" by the Authority, but reversed as to its award of counsel fees.

---

9. *See also* 42 Pa.C.S. § 2503, which provides, in relevant part:
   The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:
   * * *
   (6) Any participant who is awarded counsel fees as a sanction against another participant for violation of any general rule which expressly prescribes the award of counsel fees as a sanction for dilatory, obdurate or vexatious conduct during the pendency of any matter.

   (7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.
   * * *
   (9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.