## SNYDER COUNTY PRISON

v.

## TEAMSTERS LOCAL UNION 764, Appellant.

Commonwealth Court of Pennsylvania.

Argued June 16, 2014.

Decided July 10, 2014.

Thomas H. Kohn, Philadelphia, for appellant.

Cory A. Iannacone, Harrisburg, for appellee.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, and ROBERT SIMPSON, Judge, and MARY HANNAH LEAVITT, Judge.

OPINION BY Judge SIMPSON.

In this labor arbitration appeal, Teamsters Local Union 764 (Union) seeks review of an order of the Court of Common Pleas of the 17th Judicial District, Snyder County Branch (trial court)[1] that vacated a grievance arbitration award issued by Ralph H. Colflesh, Jr. (Arbitrator). The Colflesh Award sustained the Union's grievance and awarded it costs and attorney fees incurred in defending against an appeal by Snyder County (Employer) from an earlier arbitration award. In vacating the Colflesh Award, the trial court noted the parties' collective bargaining agreement (CBA) was silent as to the recovery of attorney fees. Therefore, the trial court determined the Colflesh Award lacked a foundation in, and did not logically flow from, the CBA.

On appeal, the Union presents two issues. First, the Union asks whether an arbitrator can award attorney fees to a union as damages for the employer's appeal of an earlier arbitration award where the CBA provided that an arbitration decision shall be final and binding, and placed

---

1. Senior Judge Richard N. Saxton presided.

no limitation on the arbitrator's authority to fashion an appropriate remedy. The Union also questions whether the Colflesh Award drew its essence from the CBA. For the reasons that follow, we affirm.

## I. Background

Here, the applicable CBA between Employer and the Union covered the three-year period from January 1, 2010 to December 31, 2013. In the CBA, Employer recognized the Union as the exclusive bargaining agent for Employer's county prison employees.

In February 2012, Employer terminated two correctional officers, William Griffith and Heather Rohrbach (Correctional Officers), for sexual harassment of a visiting nurse while she performed nursing services at the prison. Correctional Officers grieved their termination under the CBA. In July 2012, following a hearing, Arbitrator Richard C. McNeill, Jr., issued an award sustaining the grievances and immediately reinstating Correctional Officers to their positions with any lost wages. The McNeill Award also directed Employer to expunge from Correctional Officers' personnel files any mention of the discipline.

Employer timely filed a petition to vacate the McNeill Award on the basis that it violated public policy against sexual harassment. *See Phila. Hous. Auth. v. Am. Fed. of State, Cnty. & Mun. Emp., Dist. 33, Local 934 (AFSCME Local 934 (2012))*, 617 Pa. 69, 52 A.3d 1117 (2012) (arbitration award's reinstatement of employee discharged for acts constituting sexual harassment violated well-defined and dominant public policy). In February 2013, the trial court granted Employer's motion for summary judgment and entered an order vacating the McNeill Award. The Union appealed. In *Snyder County Prison v. Teamsters Local Union 764*

(*Teamsters Local 764 I*), (Pa.Cmwlth., No. 443 C.D.2013, filed October 11, 2013), 2013 WL 5614246, an unreported opinion, we determined Correctional Officers' conduct did not constitute sexual harassment. Accordingly, we reversed the trial court's order and reinstated the McNeill Award.

However, in response to Employer's appeal of the McNeill Award, the Union filed a contractual grievance, alleging Employer violated Article 13 of the CBA ("Grievance Procedure"), which provides the following three-step grievance procedure:

FIRST STEP: WARDEN

         *      *      *

SECOND STEP: COUNTY COMMISSIONERS' DESIGNEE/PRISON BOARD

         *      *      *

THIRD STEP: ARBITRATION

*Any grievance not satisfactorily settled in Step 2, above, may be appealed to arbitration by either party . . . .*

A. *The arbitrator's decision shall be final and binding upon each of the parties hereto.*

B. The expense of the arbitrator shall be shared equally by the parties hereto.

C. The arbitrator shall only have the power to interpret the terms and provisions of the Agreement and to render decisions or [sic] disputes thereunder. No arbitrator shall have the power to render decisions that would add to, subtract from, modify or nullify any of the terms and provisions of this Agreement in arriving at a decision.

R.R. at 27a–28a (emphasis added).

Initially, the Union's grievance sought that the McNeill Award be implemented, and that Employer pay all costs incurred by the Union in defending the appeal, including, but not limited to, attorney fees. *See* R.R. at 39a. Thereafter, the Union

withdrew its request for implementation of the McNeill Award, leaving only the Union's request for costs and attorney fees incurred in defense of the County's appeal of the McNeill Award. R.R. at 43a.

Issued in March 2013, the Colflesh Award held Employer violated the *final and binding* provision in Article 13 of the CBA governing grievance procedures. Arbitrator reasoned Employer contractually agreed not to appeal an arbitration award under the CBA, regardless of whether the trial court had jurisdiction over the underlying award, or whether the court had the authority to vacate or modify it.

First, in finding the grievance arbitrable, Arbitrator determined the essence of the matter to be the contractual covenant to regard arbitrators' decisions as final and binding. Arbitrator found the plain meaning of "final and binding" to be "so obvious that no extra-contractual evidence is necessary to find [Employer] breached it when it appealed the McNeill Award." R.R. at 11a. To that end, Arbitrator explained (with emphasis added):

> [Employer] also erroneously relies on its statutory right to appeal an arbitration award and what it characterizes as the lack of a 'clear and unmistakable waiver' of that right in the [CBA]. [Employer's] statutory right is unmistakable. However, to agree that that right impacts the [CBA], I would have to read the words 'final and binding' as being unclear and ambiguous and in need of an extra-contractual context. [sic] That is impossible. 'Binding' means the parties are bound by an arbitrator's ruling. 'Final' means there is no further litigation on the issue decided by the arbitrator. There is absolutely no other way to rationally apply this language. *The parties did not reserve a right of appeal for particular cases or particular cir-*

*cumstances, including circumstances where a reasonable fact-finder would have reached a different conclusion or even where an arbitrator compels an unlawful or unconstitutional action. [Employer's] appropriate option in such circumstances would be to refuse to implement the award and force the Union to file a judicial action for enforcement.*

R.R. at 11a–12a.

Nonetheless, Arbitrator recognized that Employer appealed the McNeill Award in part based on public policy. He acknowledged that a violation of public policy could possibly constitute a basis for abrogating the "final and binding" language if reinstatement of Correctional Officers violated public policy. *See* R.R. at 12a. However, Arbitrator noted the parties did not raise or argue this defense. Thus, he could not consider it. *Id.* Therefore, Arbitrator determined Employer violated the CBA by appealing the McNeill Award.

Regarding the award of attorney fees, Arbitrator pointed out a "make whole" remedy is the traditional measure of relief in labor arbitration cases. *Id.* Arbitrator continued:

> Here, [Employer] declined to be bound by the 'final and binding' provision and initiated the appeal. The harm to the Union was the expenses it has and will be forced to bear to defend what it won before Arbitrator McNeill. That amount, whatever it turns out to be, is the proper measure of damages for [Employer's] contractual breach and is the only appropriate remedy here.

R.R. at 12a–13a.

Employer timely filed a petition to modify or vacate the Colflesh Award. In November 2013, the trial entered an order vacating the Colflesh Award. In so doing,

the trial court reasoned (with emphasis added):

The parties do not dispute that the Grievance procedure provisions do not provide for the recovery of attorneys' fees under any circumstances. Therefore, the arbitrator's award must be rationally derived from the [CBA]. The CBA is very specific in its grant of authority to the arbitrator. The arbitrator is not authorized to fashion remedies per the specific language of the CBA.

Moreover, the CBA specifically prohibits the arbitrator from adding to or modifying the terms of the CBA. Subsection B ... does speak to the sharing of dispute resolution costs—namely the expense of the arbitrator. It would seem that the parties recognize that dispute resolution through the grievance process does create litigation costs. *The fact that recovery of attorneys' fees by the prevailing party is not addressed in this section of the CBA suggests that the parties did not contemplate nor agreed [sic] to the recovery of counsel fees as a remedy incident to the grievance procedure. By awarding attorneys' fees to the prevailing union, the arbitrator has added to and modified the authority vested in the arbitrator and in turn has improperly added to and modified the terms of the CBA. To the extent the arbitrator by awarding attorneys' fees has added to or modified the terms of the CBA, we cannot conclude the arbitrator's award is rationally derived from the CBA. Simply, there is no provision in the CBA that permits the arbitrator to award attorneys' fees to the prevailing party in the grievance process.*

To the extent the CBA is silent with regard to the recovery of attorney[s'] fees by the prevailing party in a grievance based upon an alleged violation of the CBA, the arbitrator's award in this case is 'without foundation' and does not 'logically flow' from the CBA. As a result, we are compelled to vacate that portion of the arbitrator's award directing [Employer] 'to pay the [U]nion's reasonable attorneys [sic] and costs incurred in opposing [Employer's] appeal of the underlying arbitration award.

Tr. Ct., Slip. Op., 11/19/13, at 4–5. The Union appeals.

## II. Appellate Review

■ Appellate review of an appeal from an arbitration award issued under the Public Employe Relations Act (PERA)[2] is governed by the highly deferential "essence test" subject to a "public policy exception." *See AFSCME Local 934 (2012)*, 52 A.3d at 1120 n. 5; *Pa. Turnpike Comm'n v. Teamsters Local Union No. 77 (Teamsters Local 77)*, 87 A.3d 904 (Pa. Cmwlth.2014) (*en banc*). Under the essence test, a reviewing court may vacate a PERA arbitration award only where the award is indisputably and genuinely without foundation in, or fails to logically flow from, the underlying CBA. If the arbitration award satisfies the essence test, the court may nevertheless consider whether the award violates a well-defined and dominant public policy. *Id.*

## III. Discussion

### A. Argument

The Union contends Arbitrator can award attorney fees as a measure of damages for Employer's appeal from the McNeill Award where the CBA provided that an arbitration decision shall be final and binding on the parties, and where the CBA placed no limitation on Arbitrator's

**2.** Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301.

authority to fashion an appropriate remedy. The Union further asserts the Colflesh Award drew its essence from the CBA.

On appeal here, the Union maintains, appellate review of PERA arbitration awards is extremely limited. *State Sys. of Higher Educ. (Cheney Univ.) v. State College & Univ. Prof'l Ass'n (PSEA–NEA)*, 560 Pa. 135, 743 A.2d 405 (1999). Although a court may differ in its interpretation of the CBA, this does not constitute grounds to vacate the award. *Id.* In short, the parties bargained for the arbitrator's construction of the CBA, not the court's interpretation of it. *Id.*

■ The essence test is a two-pronged test under which an award must be upheld if (1) the issue as properly defined is within the terms of the CBA and, (2) the arbitrator's award can be rationally derived from the CBA. *Northumberland Cnty. Comm'rs v. Am. Fed. of State, Cnty. & Mun. Emp., AFL–CIO, Local 2016, Council 86*, 71 A.3d 367 (Pa.Cmwlth.2013). Further, in applying the essence test, the reviewing court may not disturb the factual determinations of the arbitrator if they are supported by substantial evidence. *Id.*

Here, the Union contends the Colflesh Award draws its essence from the CBA. It asserts the trial court erred in determining the Colflesh Award lacked a foundation in, and does not logically flow from the CBA, because the CBA does not mention the recovery of attorney fees. In particular, the Union argues the trial court misconstrued the award of attorney fees. As the Colflesh Award makes clear, attorney fees were not awarded incident to a grievance or arbitration award. Rather, they were the true measure of damages that the Union incurred from Employer's violation of the CBA and breach of its obligation to treat the McNeill Award as final and binding.

Moreover, although the CBA provides the expenses of the arbitrator shall be shared equally by the parties, this provision does not affect the power of a different arbitrator to award fees for an independent breach of the parties' agreement to treat arbitration decisions as final and binding.

Having found a breach of the language in Article 13 of the CBA providing that an arbitrator's decision is final and binding, Arbitrator simply awarded a traditional "make whole" remedy. Arbitrator's remedy appropriately provided recovery for the costs and attorney fees the Union incurred as a result of Employer's breach of the CBA.

■ Where a CBA sets no limits on the remedial power of the arbitrator, and his decision does not add to, subtract from, or modify the terms of the CBA, the arbitrator is entitled to latitude and flexibility in fashioning a proper remedy. *Pa. Turnpike Comm'n v. Teamsters Local Union No. 250 (Teamsters Local 250 II)*, 988 A.2d 789 (Pa.Cmwlth.2010) (use of supplemental employees; attorney fees not involved); *Pa. Turnpike Comm'n v. Teamsters Local Union No. 250 (Teamsters Local 250 I)*, 162 Pa.Cmwlth. 633, 639 A.2d 968 (1994).

The Union argues such is the case here. The CBA did not limit Arbitrator's remedial powers. Rather, Arbitrator merely awarded the Union the costs it incurred as a result of Employer's breach of its promise not to appeal an arbitrator's award. Therefore, the Union asserts, Arbitrator's award of costs and attorney fees incurred by the Union in defending against Employer's appeal of the McNeill Award, has its foundation in Article 13 of the CBA, which provides that an arbitrator's decision in a grievance proceeding is final and binding.

*AFSCME Local 934 (2012); Northumberland Cnty. Commrs.*

Further, the award of costs incurred in defending against Employer's appeal of the McNeill Award logically flows from Employer's contractual obligations under the CBA to accept an arbitrator's decision in a grievance as final and binding. *Teamsters Local 250 II.* Therefore, the Union asserts, the Colflesh Award does not add to, subtract from, or modify any of the CBA's provisions. To that end, an arbitrator is entitled to some latitude in fashioning a proper make-whole remedy. *Id.*

### B. Employer's Response

■ In response, Employer contends Pennsylvania consistently follows the "American Rule" that there can be no recovery of attorney fees from an adverse party absent express statutory authorization, a clear agreement by the parties or some other established exception. *Merlino v. Delaware Cnty.,* 556 Pa. 422, 728 A.2d 949 (1999). Under the American Rule, parties to litigation generally pay their own costs, and assessment of attorney fees from another party is viewed as exceptional and limited to instances of contractual agreement. *Commonwealth v. Garzone,* 613 Pa. 481, 34 A.3d 67 (2012).

■ Further, absent an explicit provision within the CBA providing for the recovery of attorney fees, an award of attorney fees does not draw its essence from the CBA. *Phila. Hous. Auth. v. Am. Fed. of State, Cnty. & Mun. Emp., Dist. Council 47, Local 2187, AFL–CIO (AFSCME Local 2187),* 945 A.2d 796 (Pa. Cmwlth.2008). The CBA in *AFSCME Local 2187* provided that arbitration expenses shall be borne equally by the parties. The arbitrator however, awarded attorney fees for the arbitration proceeding based on the unique history of the case. However, the CBA did not provide for an award of attor-

ney fees to the prevailing party. Further, the arbitrator did not find any intentional, willful, wanton, or reckless conduct warranting punitive damages. Thus, this Court determined the arbitrator's award of attorney fees did not draw its essence from the CBA. *See also City of Phila., Office of Hous. & Cmty. Dev. v. Am. Fed. of State, Cnty. & Mun. Emp., Local Union 1971,* 166 Pa.Cmwlth. 403, 646 A.2d 1263 (1994) (absent bad faith appeal of arbitration award, trial court erred in awarding attorney fees and costs).

In addition, Employer asserts, the Union acknowledged that if Arbitrator McNeill awarded attorney fees in the underlying McNeill Award, his award would run afoul of *AFSCME Local 2187.* See Appellant's Br. at 15. However, both the McNeill Award and the Colflesh Award stem from alleged breaches of the CBA. Therefore, Employer argues, the award of attorney fees in the Colflesh Award also conflicts with the rationale in *AFSCME Local 2187.*

Employer also contends the inclusion of attorney fees as part of a make-whole remedy is contrary to public policy. Here, neither Correctional Officers nor any other bargaining unit member sustained any monetary harm as a result of Employer's appeal of the McNeill Award. Employer further asserts the attorney fees incurred by the Union in defending the appeal are ordinary business expenses, which are not passed on to the bargaining unit members.

As support, Employer cites *City of Philadelphia, Office of Housing & Community Development v. American Federation of State, County and Municipal Employees, Local Union 1971 (AFSCME Local 1971 (2005)),* 583 Pa. 121, 876 A.2d 375 (2005), a case wherein this Court initially vacated a roughly $900,000 monetary award to a union based on hypothetical wages that union employees, rather than the subcontracted

non-union employees, would have received. In affirming our decision, the Supreme Court noted the only two job-qualified union members remained fully employed throughout the period. Thus, the Supreme Court characterized the monetary award as punitive damages, noting the remedy did not make the union whole, but gave the union a windfall of approximately $30,000 per member.

Here, no bargaining unit member sustained any monetary loss from Employer's appeal of the McNeill Award. Therefore, the Colflesh Award resulted in an unlawful windfall for the Union. *AFSCME Local 1971 (2005).* Punitive damages against a government entity, which exacts retribution on the shoulders of blameless or unknowing taxpayers, violates public policy and is thus unenforceable. *Id.*

Employer further asserts the Union's reliance on *Teamsters Local 250 I and II,* for the proposition that an arbitrator must be given latitude and flexibility in fashioning an award, is misplaced. In those cases, the bargaining unit members sustained monetary losses when the employer subcontracted work to non-union employees. Here, to the contrary, the Union cannot show harm to any bargaining unit members.

Finally, Employer points out, in *Teamsters Local 77,* this Court recently vacated an arbitrator's monetary award of damages on grounds similar to those in *AFSCME Local 1971 (2005).* In *Teamsters Local 77,* the arbitrator required the employer to pay the union at the prevailing wage rate for hours of work performed by a grass cutting subcontractor. Ultimately, citing *AFSCME Local 1971 (2005),* we reasoned that the award was not for the purpose of making the bargaining unit members whole for lost wages, but to punish the employer's behavior. Accordingly, we vacated the monetary award as an im-

permissible award of punitive damages against a government entity.

Employer argues the present case similarly involves an award of punitive damages against a governmental entity. Therefore it violates a well-defined public policy. *AFSCME Local 1971 (2005).*

## C. Analysis

The Union's grievance, filed in response to Employer's appeal of the McNeill Award, initially requested that the McNeill Award be implemented. The McNeill Award restored Correctional Officers' wages, employment benefits and seniority benefits. It also expunged the record of discipline from Correctional Officers' personnel records. In other words, the McNeill Award made Correctional Officers' whole for their erroneous discharge.

However, in September 2012, the Union amended its grievance by dropping its request that the McNeill Award be implemented. *See* R.R. at 43a. As such, the grievance proceeded solely on the request for costs and attorney fees incurred by the Union in defense of Employer's appeal of the McNeill Award. *Id.*

In denying the Union's amended grievance in the step prior to arbitration, Employer's Board of Commissioners reasoned that the CBA did not provide for either party to recoup its attorney fees in any situation. R.R. at 44a. The Commissioners further recognized that the parties' past practice has been that each party bears its own costs, including attorney fees, for disputes arising under the CBA. *Id.* The grievance then proceeded to arbitration.

Our review of the Colflesh Award is governed by the essence test. *AFSCME Local 934 (2012); Teamsters Local 77.* The essence test is a two-pronged test under which an award must be upheld if

(1) the issue as properly defined is within the terms of the CBA and, (2) the arbitrator's award can be rationally derived from the CBA. *Id.* Under the essence test, a reviewing court may vacate a PERA arbitration award only where the award is indisputably and genuinely without foundation in, or fails to logically flow from, the underlying CBA. *Id.* Further, if the award satisfies the essence test, the court may also consider whether the award violates a well-defined and dominant public policy. *Id.*

■ Applying the essence test here, we note the issue of whether Employer violated the *final and binding* provision of Article 13 of the CBA arose from the terms of the CBA's grievance procedure. In other words, Arbitrator determined Employer breached its contractual obligation under the CBA to recognize arbitration decisions as final and binding.

In his decision, however, Arbitrator acknowledged Employer could possibly appeal the McNeill Award based on a violation of public policy. R.R. at 12a. To that end, Arbitrator stated (with emphasis added):

> [Employer] initiated an appeal of the McNeill Award. It did so because it believed the Award (1) violated public policy; (2) did not properly apply facts found by the Arbitrator to [Employer's] policy definition of sexual harassment and other malfeasance; (3) improperly required [Employer] to purge personnel (but not other) files …; and, (4) erroneously found [Employer] violated due process rights.

> Only the first of these would possibly constitute a basis for abrogating the 'final and binding' provision on the ground that it was legally impossible for [Employer] to comport with the 'final and binding' language because reinstatement

of [Correctional Officers] violated public policy.

*Id.* Nonetheless, Arbitrator declined to consider a public policy defense because the parties neither raised nor argued it. *Id.*

Regardless of whether Employer had a valid public policy reason for appealing the McNeill Award, Arbitrator's "make whole" remedy to the Union does not have its foundation in, or logically flow from, the CBA. As noted above, Correctional Officers were made whole by the McNeill Award. To that end, Arbitrator stated:

> The harm to the Union was the expenses it has and will be forced to bear to defend what it had won before Arbitrator McNeill. That amount, whatever it turns out to be, is the proper measure of damages for [Employer's] contractual breach and is the only appropriate remedy here.

R.R. at 12a–13a.

As discussed above, absent an explicit provision within the CBA providing for the recovery of attorney fees, an award of attorney fees to a union does not draw its essence from a CBA. *AFSCME Local 2187.* Here, as the trial court noted, the parties agreed that the CBA did not provide for the recovery of attorney fees under any circumstances.

In addition, no bargaining unit member sustained any monetary loss as a result of Employer's appeal of the McNeill Award. Therefore, the Colflesh Award resulted in unlawful windfall for the Union. *AFSCME Local 1971 (2005).* An award of punitive damages against a government entity violates public policy and is thus unenforceable. *Id.*

Furthermore, in *Teamsters Local 77,* we vacated a monetary award of damages. In *Teamsters Local 77,* the arbitrator required the employer to pay the *union* at

the prevailing wage rate for hours of work performed by a grass cutting subcontractor, despite the fact that no union members lost any wages. We reasoned that the arbitration award was not for the purpose of making bargaining unit members whole for lost wages, but to punish the behavior of the governmental employer. In reality, the ones punished were the unknowing taxpayers, who may be subject to increased taxes or a reduction in services as a result of the award. Accordingly, we vacated the monetary award as an impermissible award of punitive damages against a government entity.

Such is also the case here. Correctional Officers were made whole by the McNeill Award. The Union's amended grievance sought only the costs and attorney fees it incurred in defending the appeal of the McNeill Award. Absent any explicit provision within the CBA providing for the recovery of attorney fees, an award of attorney fees did not have its foundation in, logically flow from, or draw its essence, from the CBA. *AFSCME Local 2187.* In addition, an award of attorney fees to the Union under the circumstances in the present case constitutes an unlawful award of punitive damages against Employer, a local government agency. *AFSCME Local 1971 (2005); Teamsters Local 77.*

### IV. Conclusion

For the above reasons, we uphold the trial court's order vacating the Colflesh Award.

### *ORDER*

**AND NOW,** this 10th day of July, 2014, for the reasons stated in the foregoing opinion, the order of the Court of Common Pleas of the 17th Judicial District, Snyder County Branch, is **AFFIRMED.**