**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4245
_____

JEFFREY M. TERRY,

Appellant

v.

TOWN OF MORRISTOWN; KARL PETER DEMNITZ
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-06-cv-01788)
District Judge:  Hon. Katharine S. Hayden

Submitted September 22, 2011

Before:  AMBRO, CHAGARES, and GARTH, Circuit Judges.

(Filed: September 30, 2011)
_____

OPINION
_____

CHAGARES, Circuit Judge.

Jeffrey Terry appeals the District Court's grant of summary judgment to the Town

of Morristown and Chief of Police Karl Peter Demnitz (hereinafter the "Town") on his

claims for disability discrimination.  Terry contends that the Town discriminated against

him by denying him a position as a police officer after he failed the required

psychological evaluation. For the reasons that follow, we will affirm the judgment of the District Court.

I.

We write for the parties' benefit and recite only the facts essential to our disposition. Jeffrey Terry was employed as a Public Safety Telecommunicator with the Morristown Police Department beginning in August 2002. He decided to apply for a position as a Police Officer in the department. He interviewed for the position on June 28, 2004, and the interview panel declined to recommend him for a position. Terry reapplied, interviewed in December 2004, and was given a conditional offer of employment subject to successful completion of a physical and psychological evaluation in accordance with N.J. Admin. Code § 4A:4-6.1(a)(3).[1]

On December 27, 2004, Terry underwent a psychological fitness evaluation by the Institute of Forensic Psychology. Dr. Matthew Guller, who held a psychology permit in the State of New Jersey, performed the in-person exam, under the supervision of his supervisor, licensed psychologist Leslie J. Williams, Ph.D. During the interview, Terry revealed that he was previously employed as a bouncer, and while a bouncer was involved in several incidents. Terry noted that officers reporting these incidents found him overly aggressive due to his use of force when it may not have been necessary. Dr. Guller learned that Terry had been fired from his two previous jobs and reported that he took no blame for either termination. After conducting the psychological evaluation, Dr.

_____

[1] Section 4A:4-6.1(a)(3) provides that an applicant for the position of a police officer may be denied eligibility for the position if he or she is "physically or psychologically unfit to perform effectively the duties of the title."

2

Guller did not recommend Terry for the appointment to a police officer, concluding that Terry

> lacked credibility in terms of his discussion of many of the issues in his background. In addition, his history indicates a pattern of impulsivity and/or poor judgment, which can be dangerous, or a significant problem in a police role. His test findings raised some concerns about his functioning within a team environment. . . . [T]here is some indication from his history and the background information provided by the department that this man may be overly aggressive, and potentially apt to use unnecessary force.

Appendix ("App.") 121. As a result of Dr. Guller's report, Chief Demnitz did not hire Terry for the police officer position.

Terry opted to undergo a second psychological evaluation by a psychologist of his choice, Dr. Bart Rossi. Dr. Rossi concluded that Terry was fit to be a police officer and displayed no significant psychological problems. He reported:

> Mr. Terry presented himself quite well during the interview session. He has never been arrested, has never had a restraining order placed against him, and indicates no problems with drugs or alcohol. At this time he has a clear driving record. He has worked effectively in his current position as a dispatcher for over two years. His psychological testing results indicate[] that he is bright (high above average), and has a personality profile . . . that is within Normal Limits. There is no indication of any significant psychological problems or issues.

App. 126. After receiving Dr. Rossi's report, Chief Denmitz chose not to reverse his hiring decision in regard to Terry because Denmitz found Dr. Rossi's report was not sufficiently comprehensive in that it did not address concerns about Terry's aggressiveness raised in Dr. Guller's evaluation.

Terry appealed the Town's decision to the State of New Jersey, Department of Personnel, Merit System Board. Terry's matter was referred to the Medical Review

3

Panel, which conducted a hearing on October 21, 2005, and recommended that Terry receive an independent evaluation by Dr. Robert Kanen, Ph.D. On January 7, 2006, Dr. Kanen issued a report which concluded that Terry was not psychologically fit for duty as a police officer. Dr. Kanen reported that Terry "shows evidence of longstanding character and behavioral traits that would adversely interfere with his capacity to adequately perform the duties of a police officer." App. 145. Dr. Kanen found that Terry had "a history of work performance problems, . . . difficulty accepting responsibility for his mistakes and tends to attribute difficulties he encounters to the actions of others." App. 145. When faced with an intense, emotionally charged situation, the report noted that Terry "may have difficulty effectively modulating his emotions and the resulting response may be grossly inappropriate for what the situation warrants." App. 145. Because "Terry would have difficulty effectively interacting with the community during emotionally charged, stressful and complex situations," Dr. Kanen ultimately concluded that he was not a suitable police officer candidate. App. 146.

Following Dr. Kanen's evaluation, Terry filed exceptions with the Board, arguing that Dr. Rossi's report should be adopted over Dr. Guller's and Dr. Kanen's based on Terry's contentions that Dr. Guller was not licensed to practice psychology at the time of the examination[2] and because Dr. Kanen's report was not independent, as it relied on Dr.

_____

[2] Terry places significant weight in supporting his discrimination claim on the fact that in 2006 Dr. Guller was reprimanded for practicing psychology without a license. There is no evidence, however, that this fact was known to the Town when in January 2005 it retracted Terry's conditional employment offer relying on Dr. Guller's opinion. Therefore, since the Town relied on what it believed to be a legitimate evaluation, subsequent revelations regarding Dr. Guller's qualifications are not relevant to Terry's

4

Guller's examination. The Board concluded that Dr. Kanen's report was independent and comprehensive and that Dr. Rossi's report was incomplete in that it failed to address concerns about Terry's aggression. Therefore, the Board determined that the Town had met its burden of proof that Terry was unfit to perform the duties of a police officer. Terry appealed the Board's decision, and on August 22, 2007, the New Jersey Superior Court, Appellate Division affirmed the Board's conclusion and held that its decision was based on substantial credible evidence.

On April 19, 2006, Terry brought suit against the Town in the District Court of New Jersey, raising claims of disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5-1, et seq., and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 701, et seq. The District Court, on September 30, 2010, granted the Town's motion for summary judgment, holding that Terry had not established a prima facie case of discrimination, as he was not disabled within the meaning of the law and, even if it is assumed that Terry could establish a prima facie case of discrimination, his claims would nonetheless be subject to dismissal as he failed to specify "what alleged perceived disability he had or how the failed psychological evaluations were pretext for the alleged discrimination." App. 9. Terry filed a timely notice of appeal.

---

discrimination claim. Moreover, any possible harms suffered as a result of Dr. Guller's alleged unqualified opinion were cured by Dr. Kanen's later examination.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is plenary, and we apply the same legal standard as it should have applied. Vitalo v. Cabot Corp., 399 F.3d 536, 542 (3d Cir. 2005). A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In conducting our analysis, we must view the record in the light most favorable to Terry, and must draw all reasonable inferences in his favor. See Vitalo, 399 F.3d at 542. To defeat summary judgment, however, Terry must "show[] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

## III.

In the absence of direct evidence of discrimination, as here, a plaintiff may prove discrimination according to the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, the plaintiff bears the initial burden of establishing a prima facie case of unlawful discrimination. Id. at 802. If the plaintiff succeeds, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its decision. Id. Once the employer meets its "relatively light burden," the burden of production returns to the plaintiff, who must show by a preponderance of the evidence that the employer's proffered reason is pretextual. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). Accordingly, once an employer has proffered a legitimate, nondiscriminatory reason, the plaintiff "generally

6

must submit evidence which: 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Id. at 762. Because the ultimate issue is whether "discriminatory animus" motivated the employer, it is not enough to show that the employer made a "wrong or mistaken" decision. Id. at 765 (citations omitted). Rather, the plaintiff must uncover "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanation that would allow a reasonable factfinder to believe that the employer did not truly act for the asserted reason. Id.

In order to maintain a prima facie case of disability discrimination under the ADA, the Rehabilitation Act or NJLAD, Terry must show that (1) he is disabled; (2) he can perform the essential functions of his job with or without reasonable accommodations; and (3) he has suffered an adverse employment action as a result of discrimination based on his disability. Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000); see also Lawrence v. Nat'l Westminster Bank, 98 F.3d 61, 70 (3d Cir. 1996); McDonald v. Commonwealth of Pennsylvania, 62 F.3d 92, 95 (3d Cir. 1995). Terry must demonstrate that he is disabled by showing (1) that he has a "physical or mental impairment which substantially limits one or more major life activities," (2) that he has a "a record of such an impairment," or (3) that he "is regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C).

7

We agree with the District Court that Terry has failed to establish a prima facie case of disability discrimination. He has not maintained a consistent theory on his disability. In his second amended complaint, Terry apparently alleges that he was regarded as having a physical or mental impairment that substantially limits one or more major life activities. The District Court observed, however, that Terry failed to identify any specific type of impairment that he had or was regarded as having. App. 7. Further, Terry did not show how such an impairment "does not substantially limit major life activities but is treated by the [employer] as constituting such limitation [or] that substantially limits major life activities only as a result of the attitudes of others toward such impairment." Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 187 (3d Cir. 1999); see Bailey v. Georgia-Pacific Corp., 306 F.3d 1162, 1169 (1st Cir. 2002) ("A plaintiff claiming that he is 'regarded' as disabled cannot merely show that his employer perceived him as somehow disabled; rather he must prove that the employer regarded him as disabled within the meaning of the ADA."); Francis v. City of Meriden, 129 F.3d 281, 288 (2d Cir. 1997) ("To be considered disabled under the 'regarded as' prong of the statutes, therefore, a plaintiff must allege that the employer regarded the employee to be suffering from an impairment within the meaning of the statutes, not just that the employer believed the employee to be somehow disabled." (emphasis added)). These failures by themselves could arguably doom Terry's appeal. See generally Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 84 (1st Cir. 2008) ("[T]he Supreme Court has implied that regarded as claims under the ADA require an even greater level of specificity than other claims.").

8

Terry states for the first time on appeal, however, that his disability is Attention Deficit Disorder ("ADD"), as mentioned in Dr. Guller's evaluation, and that he was regarded by the Town as having this disability. Even assuming that Terry does qualify as disabled under the ADA, there is no evidence that his diagnosis of ADD was factored in any way into the Town's decision to deny Terry the position. Quite to the contrary, the evidence supports a conclusion that the Town believed Terry was not qualified for the position as a result of the findings regarding his aggressive behavior, inability to follow orders, and difficulty interacting with the community.

Moreover, assuming that Terry could establish a prima facie case, the Town has proffered legitimate, nondiscriminatory reasons for its decision – the findings regarding Terry's aggressive behavior, inability to follow orders, and difficulty interacting with the community – and Terry has failed to show these reasons were a pretext for discrimination. Therefore, we conclude that Terry's discrimination claim lacks sufficient merit and will affirm the District Court's grant of summary judgment.[3]

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[3] To the extent that Terry is arguing that N.J. Admin. Code § 4A:4-6.1(a)(3) violates the ADA by creating a blanket exclusion for those with mental disabilities, we are not persuaded. The language of § 4A:4-6.1(a)(3) does not exclude every person with mental disorders, but simply states that an employment position may be denied if a candidate is "psychologically unfit to perform effectively the duties of the title." This does not constitute a blanket exclusion, and it is evident from the record that Terry received an appropriate assessment of his ability to perform the duties of the position.