NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 11-1768

_____

DANIEL S. GRIFFIN,
Appellant

v.

MUNICIPALITY OF KINGSTON, PAUL KEATING, KEITH KEIPER,
KINGSTON CIVIL SERVICE COMMISSION, JOHN JUDGE,
FRED CASE, NANCY COOPER

_____

Appeal from the United States District Court for the Middle District of Pennsylvania
(No. 3:08-cv-2290)
District Judge: Honorable A. Richard Caputo

_____

Submitted under Third Circuit LAR 34.1(a)
November 18, 2011

_____

Before: FUENTES and CHAGARES, <u>Circuit Judges</u>
and POGUE,[*] <u>Judge</u>

(Opinion Filed: November 30, 2011)

_____

OPINION

_____

_____

[*] Hon. Donald C. Pogue, Chief Judge, United States Court of International Trade, sitting by designation.

POGUE, <u>Judge</u>,

Appellant Daniel Griffin appeals the District Court's grant of summary judgment. Appellant claims that after he sustained a back injury he was terminated by the Municipality of Kingston and several of its officials ("Appellees") because of his disability. Appellant alleges violation of his rights to due process and equal protection, his rights under the Americans with Disabilities Act ("ADA"), retaliation, wrongful discharge and civil conspiracy. For the reasons discussed below, we will affirm the District Court's opinion.

## I. BACKGROUND[1]

Appellant was hired as a Patrolman with the Kingston Police Department ("Kingston" or "the Department") in 1990 and subsequently became a Detective. He was injured on January 17, 2006 when he slipped and fell on the ice in the parking lot outside of the Department. This injury affected Appellant's ability to work, and he took a leave of absence. Kingston offered Appellant a light duty clerical position, but he did not return to work.

In March of 2006, while Appellant was on leave, the Department posted a job announcement for the position of Sergeant, and Appellant passed an examination to be certified for promotion. On March 23, 2007, Kingston again posted an opening for a Sergeant position, which included physical fitness requirements for the position. Active

---

[1] Because we write primarily for the benefit of the parties, we recount only the critical facts.

2

duty status was also a requirement for the opening. Appellant applied, but Appellees denied him the position, stating Appellant's inactive status as the reason. Appellant was later arrested and then terminated in December of 2007.

Appellant filed a complaint with the Pennsylvania Human Relations Commission and cross-filed with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of the ADA.[2] In due course, Appellant filed his action in the district count on December 22, 2008. Appellees' motion to dismiss was granted in part on June 23, 2009. On May 17, 2010, Appellees filed a motion for summary judgment, which was granted on February 22, 2011.

## II. JURISDICTION & STANDARD OF REVIEW

We have appellate jurisdiction under 28 U.S.C. § 1291. We review a district court's grant of summary judgment *de novo*. Kopec v. Tate, 361 F.3d 772, 775 (3d Cir. 2004). Construing the facts in the light most favorable to the Appellant, we determine whether summary judgment was warranted in the absence of a genuine dispute regarding any material fact. Id.; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 255 (1986).

## III. ANALYSIS

### A. Procedural Due Process

To establish his 42 U.S.C. § 1983 claim, Appellant must show that he was

---

[2] 42 U.S.C.A. §§ 12101-12213 (2006).

deprived of a property interest under color of law and without due process. Solomon v. Phil. Hous. Auth., No. Civ. A. 02-CV-6630, 2004 WL 1427140, at *3 (E.D. Pa., June 18, 2004). Appellant's failure to utilize the grievance procedure available under his collective bargaining agreement ("CBA") is fatal to this claim.

In public employment, a grievance procedure in a CBA may satisfy due process requirements. Dykes v. Se. Pa. Transp. Auth., 68 F.3d 1564, 1571 (3d Cir. 1995). A three-part balancing test determines whether a particular grievance procedure satisfies due process concerns. The court considers: 1) the private interest that would be affected by the official action; 2) the risk of erroneous deprivation through the grievance process as well as the probable value of additional or substitute safeguards; and 3) the government's interest that would be affected by the official action. Id. at 1572.

Applying the three-part test here, while the private interest in employment is substantial, the risk of deprivation is likely minimal based on the independence and nature of the CBA; moreover, the government's interest in resolving disputes is substantial. Accordingly, we agree with the District Court that Appellant cannot claim a violation of due process unless he can prove that he either took advantage of the grievance procedures or was denied the chance to do so. Solomon 2004 WL 1427140 at *3.

Appellees contend that Appellant received notice of his right to appeal under the CBA or the Civil Service Rules and Regulations ("CSRR") but that he never filed a grievance. Appellant states that he filed a grievance pursuant to the CBA. However, he

4

provides no such evidence, and admitted in his deposition that he may have told his physician that he did not file in time. Ultimately, Appellant proffered no further evidence of a filing. Accordingly, Appellant cannot succeed on this claim.

## B. Equal Protection under the ADA and the Fourteenth Amendment

Appellant also claims that he was subject to discrimination and denied equal protection under the Fourteenth Amendment. The District Court granted summary judgment on Appellant's discrimination claim, stating that he had not made out a *prima facie* case that he was a qualified individual under the ADA.[3]

---

[3] Under the ADA, an entity may not discriminate against a "qualified individual" for having a disability. "The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111. Further, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

"(1) Disability

The term "disability" means, with respect to an individual--

  (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

  (B) a record of such an impairment; or

  (C) being regarded as having such an impairment (as described in paragraph (3)).

(2) Major life activities

  (A) In general

For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting,

To establish a *prima facie* case for discrimination, Appellant must show that he is: 1) disabled; 2) qualified to perform the essential tasks of the job; and 3) that he has suffered an otherwise adverse employment decision as a result of the discrimination. Deane v. Pocono Med. Ctr., 142 F.3d 138, 142 (3d Cir. 1998). Appellant fails to establish a prima facie case on either the first or the second element, and therefore necessarily fails to establish the third.

Appellant claims that he could hold the position of Sergeant if he did not have to meet with the public, because he was injured and taking medication, adding that his physician did not authorize him to perform the job that was "fabricated" for him by the Department. Appellant also states that his injury prevented him from working, and he does not present evidence of being fit to perform the job. He was also informed that active duty status was a requirement for the Sergeant position.

Appellees argue that Appellant's claim of disability is proven false by videotape evidence of Griffin carrying a recliner near his home, carrying a watering can and an axe, and bending to plant flowers. To Appellees, the inability to perform a single job does not make one disabled; Appellees claim that Appellant's injuries do not limit "major life" activities so as to qualify under the statute.

To prevail, Appellant must show that he was subject to discrimination as the result

---

bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."

42 U.S.C. § 12102.

6

of a disability within the ADA definition, as opposed to just "somehow" limited or disabled. Terry v. Town of Morristown, No. 10-4245, 2011 WL 4526773, at *4 (3d Cir. Sept. 30, 2011). Appellant makes no showing of such a disability here. The videotape evidence shows that Appellant was physically able to perform certain life functions, and Appellant does not meaningfully contest this evidence.

Moreover, we agree with the District Court that Appellant has not presented sufficient evidence to show that he is a qualified individual under the ADA. Kingston offered Appellant a light duty clerical position, but the Appellant did not return to work. The Department attempted to make an accommodation in the form of a clerical job, and Appellant admitted that he could not perform the duties of a job that required a certain minimum level of fitness, thus exempting him from "qualified individual" status.[4]

### C. Retaliation[5]

To establish a First Amendment retaliation claim, Appellant must show: 1) that his conduct was constitutionally protected, 2) that he suffered an adverse action, and 3) that the constitutionally protected conduct was a "substantial" factor in the decision to

---

[4] As Appellant's ADA claim fails, his 14th Amendment equal protection claim must also fail. Lavia v. Pa., Dept. of Corrections , 224 F.3d 190, 200 (3d Cir. 2000) ("In comparing the protections guaranteed to the disabled under the ADA . . . with those limited protections guaranteed under the rational basis standard of the Fourteenth Amendment, it is clear that the former imposes far greater obligations and responsibilities on the States than does the latter.").

[5] Appellant combined his retaliation and hostile work environment claims, but the District Court noted that evaluating either claim demonstrates that Appellant failed to make out the essential elements of either theory. In his appeal Appellant focuses on his retaliation claim.

7

terminate his employment. Mincy v. Klem, No. 11-2041, 2011 WL 4867550, at *2 (3d

Cir. Oct. 14, 2011); see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S.

287, 97 S. Ct. 568, 576 (1977).[6] If Appellant can make this showing, the Department

may still prevail by showing a legitimate reason for the termination. Rauser v. Horn, 241

F.3d 330, 334 (3d Cir. 2001).

Appellant claims that Appellees engaged in retaliatory behavior against him and

that he was suspended and terminated as a result of filing his EEOC complaint, stating

that his conduct was "[o]bviously" the substantial factor in the retaliation. However,

Appellant must provide sufficient factual proof to support an inference of retaliatory

---

[6] An ADA retaliation claim also contains a causation requirement. See 42 U.S.C.
§ 12203(a) ("No person shall discriminate against any individual because such individual has
opposed any act or practice made unlawful by this chapter or because such individual made a
charge, testified, assisted, or participated in any manner in an investigation, proceeding, or
hearing under this chapter.").
    As the District Court notes, ADA retaliation claims are analyzed under the same
framework as Title VII claims. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir.
1997) ("To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1)
protected employee activity; (2) adverse action by the employer either after or contemporaneous
with the employee's protected activity; and (3) a causal connection between the employee's
protected activity and the employer's adverse action. . . . If an employee establishes a prima facie
case of retaliation under the ADA, the burden shifts to the employer to advance a legitimate,
non-retaliatory reason for its adverse employment action. . . .The employer's burden at this stage
is 'relatively light: it is satisfied if the defendant articulates any legitimate reason for the [adverse
employment action]; the defendant need not prove that the articulated reason actually motivated
the [action].' . . .If the employer satisfies its burden, the plaintiff must be able to convince the
factfinder both that the employer's proffered explanation was false, and that retaliation was the
real reason for th e adverse employment action.").

    Causation can be shown through temporal proximity between the protected activity and
the adverse employment action; an intervening pattern of antagonism; or the evidence taken as a
whole. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280–81 (3d Cir. 2000); Kachmar v.
SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997).

conduct . <u>Keating v. Bucks Cnty. Water & Sewer Auth.</u>, No. CIV. A. 99-1584, 2000 WL 1888770, at *8 (E. D. Pa. Dec. 29, 2000), <u>Meenan v. Harrison</u>, 264 Fed. Appx. 146, 148, 2008 WL 364392, at *1 (3d Cir. 2008); <u>Pulice v. Enciso</u>, 39 Fed. Appx. 692, 696, 2002 WL 1575090, at *3 (3d Cir. 2002). Because Appellant provided no such evidence his argument must fail.

Appellees explained that Appellant was fired in the wake of a suspension for having misrepresented himself and for having criminal charges filed against him. Although Appellant cites to the chronology of events, he provides no evidence from which to draw a causal connection between his protected activity and his termination or to challenge Appellees' explanation of the events. Accordingly, Appellant's claim fails.

### D. **Wrongful Discharge**

A Pennsylvania state cause of action for the tort of wrongful discharge is not available where there is a collective bargaining agreement that adequately protects employees from being terminated without cause. <u>Phillips v. Babcock & Wilcox</u>, 349 Pa. Super. 351, 355, 503 A.2d 36, 38 (1986). Appellant argues that his termination violated public policy because he received Worker's Compensation and Heart & Lung Act benefits. He also claims that he was not able to utilize the CBA and is therefore entitled to bring a claim here. Plaintiff's assertions, however, lack any legal foundation that could give them weight.

9

## E. Civil Conspiracy

Finally, Appellant attempts to make a claim of civil conspiracy, asserting that Appellees conspired with his insurance company to disqualify Appellant from receiving benefits and to force him to take a position that was not suitable. Appellant claims that the position offered to him did not exist prior to this action and that it would also violate the CBA. In addition, Appellant claims that Keystone Rehabilitation did not examine him, but nonetheless made a decision regarding his ability to perform a job. Finally, Appellant claims that the police conspired to file criminal charges against him.

The District Court, however, properly found that the failure of Appellant's civil claim for wrongful discharge is also fatal to Appellant's claim for civil conspiracy. Without a cause of action for the act of wrongful discharge, there can be no cause of action for civil conspiracy to commit that act. Pelagatti v. Cohen, 370 Pa. Super. 422, 432, 536 A.2d 1337, 1342 (1987).

## IV. CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.